33932. THOMAS v. THE STATE.
33933. WIMS v. THE STATE.

HALL, Justice.

Appellants Charlie Lee Thomas and Marvin Lee Wims were convicted in 1977 in Fulton County Superior Court of the murder and armed robbery of Ernest Wilson. These are their appeals.

Wilson lived alone in an Atlanta rooming house and sold illegal whiskey. At the joint trial of Wims and Thomas, Gloria Askew testified for the state that Wims, Thomas, Angela Smith and she went to the victim's rooming house where she used a pretext to gain admission to his room. Thomas and Wims then beat and robbed him, taking his money and a brown electric fan. She testified that during the transaction the victim's dog came out from under the bed and bit Angela Smith, and Thomas shot and killed the dog. Angela Smith testified and corroborated this testimony in all significant points. Wilson's neighbor, Sinclair, testified that he saw a foursome, including a woman he recognized as Gloria Askew and a man he identified as the defendant Wims, outside the victim's door. Later he heard voices from the victim's room, saw a woman emerge carrying the fan, and heard three shots. Wims then came from the room, carrying a .38 caliber

nickel-plated pistol, and then Gloria Askew emerged. Wims said "son-of-a-bitch," pocketed the gun, broke into a run and left.

Sinclair and another roomer waited about two minutes, then went to the victim's door and found it locked. Calling through the door they asked him what happened, and he called back "They done robbed me." He also said, "They done killed my dog." "They robbed me and beat me up." The victim passed the key beneath the door and his neighbors opened it. He repeated his statements about being hurt and robbed, saying his assailants had hit him in the back of the neck two or three times with the pistol barrel, and that when he fell they kicked him two, three or four times trying to make him reveal where he kept the rest of his money. Sinclair suggested that they call the police, and the victim responded that he did not know any of the perpetrators. Sinclair reminded him that in fact he must know one of the women, because she had been in his room earlier that very day. The victim then sat down in a daze or trance, looking at his dog. The room showed signs of a struggle; the bedcovers were off the bed on the floor; and the dog was lying on the floor dead of two bullet wounds.

The victim did not appear to be seriously injured, but died the next day. The medical examiner testified that death was the result of "acute subdural hematoma caused by blunt force trauma" to the head.

The two appellants were jointly tried and convicted. Both female perpetrators testified for the state and implicated the men, and each woman testified that she had not willingly participated in the crime. Both appellants testified and proffered alibi defenses.

The robbery convictions were subsequently set aside (see *Reed v. State,* 238 Ga. 457 (233 SE2d 369)(1977)). On these appeals from their convictions of murder, Thomas and Wims raise numerous charges of error which we address below:

1. Whether the victim's statements to his neighbors following the attack were admissible as part of the res gestae lay within the discretion of the trial court, which on these facts did not err in admitting them. Code Ann. § 38-305; *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751, 775 (12

SE 18) (1888); *Bunn v. State,* 144 Ga. App. 879, 880-881 (243 SE2d 105) (1978); *Land v. McClure,* 135 Ga. App. 243, 244 (217 SE2d 600) (1975).

Thomas urges that the statements lacked spontaneity because they were made in answer to a question; but this fact alone will not render them inadmissible. *Hunter v. State,* 147 Ga. 823, 827 (95 SE 668) (1918). Citing *Lyles v. State,* 130 Ga. 294, 300 (60 SE 578) (1908), Wims argues that the statements were inadmissible because necessarily infected with afterthought, as evidenced by the fact that the victim stated he knew none of his attackers when in fact he knew Gloria Askew. Given the testimony showing that the victim seemed dazed or half drunk, we cannot conclude that his error showed afterthought; confusion is equally probable. The court did not err in admitting the statements.

2. Both appellants object here to the trial court's statement made in colloquy with counsel concerning an evidentiary ruling, to the effect that his rulings were correct until reversed by a higher court. They argue that this impermissibly suggested to the jury that their mistakes might similarly be corrected on appeal. The argument here is totally without merit. Counsel was attempting to argue with the court after a ruling had been made, and the court merely emphasized the finality of the ruling. See *Scott v. State,* 229 Ga. 541, 546 (192 SE2d 367) (1972); *Paulhill v. State,* 229 Ga. 415, 416 (191 SE2d 842) (1972).

3. Similarly without merit is the argument by both appellants that the court erred in stating that in his opinion the medical examiner was an expert. This did not constitute a forbidden expression of opinion on the facts, (see Code Ann. § 81-1104). It merely reflected that the witness had been properly qualified as an expert (see Code Ann. § 38-1710), which was a conclusion to which neither defendant made any objection. This enumeration of error is without merit.

4. Both appellants urge as error the failure to admit certain medical records by which to impeach the state's medical witness. The witness had testified that there was no malignancy (cancer) in the victim's brain, and the

records contained a notation that the victim suffered "malignant brain edema," which was alleged to be impeaching.

This notation is not impeaching because it is not inconsistent with the expert's testimony. "Malignant" used in this way and "malignant edema" do not mean cancerous, but mean deadly, likely to be fatal, or having a poor prognosis. Webster's 3rd New Internat. Dict. (1961). The notation meant that the victim suffered a dangerous swelling (edema) of the brain. The fact that the evidence could not have been impeaching moots further arguments on this point.

5. The trial court's charge concerning conflicts in the testimony of witnesses was proper. This was not a circumstantial evidence case, and therefore Thomas' argument here that the court should have charged that the jury should find defendants innocent if the witnesses' testimony was in irreconcilable conflict, has no application.

6. The evidence was adequate to support the convictions of both defendants. Thomas' enumeration of error on the general grounds is without merit, and Wims' motion for directed verdict was properly overruled. Wims' objections to the hypothetical questions put to the medical witness were also properly overruled. The first such question was not even hypothetical, but asked whether the witness had had sufficient information to form an opinion as to the cause of death. The second question was hypothetical, and the facts on which it was based were contained in the statements of the victim. The evidence supported the state's theory that the acts of the defendants were the cause of the victim's death.

7. Wims' enumeration of error that the trial court erred in refusing his motion to sever his trial from Thomas' is without merit. The transcript shows plainly that he abandoned this motion when he learned that only he and Thomas were to be tried together, and not the two women, and that neither he nor Thomas had confessed, obviating any confrontation problem. Moreover, their defenses were not inconsistent as alleged, and Thomas' closing argument that the situation "started out as a routine mugging" does not prejudice Wims whose own

attorney said in argument "I don't doubt that there was a robbery. I do doubt that there was a murder." The defendants were properly tried together. See Code Ann. § 27-2101.

8. Wims' armed robbery conviction has been set aside by the trial court, mooting his enumeration of error with respect thereto.

9. Wims' seventh enumeration of error complains that the best evidence rule was violated by the state's eliciting testimony from Gloria Askew concerning the contents of a letter written to her by Wims, without putting the letter into evidence. Askew testified that Wims brought up the subject of her getting another lawyer, and predicted to her that if all four of the indictees stuck together they would all go home. The record on this point is somewhat ambiguous as to whether Wims wrote this to her or told her in a conversation. Assuming a letter, any error in this respect was harmless considering the abundance of direct evidence of Wims' guilt.

10. Appellants enumerate several errors in the court's charge concerning conspiracy and accomplices' testimony.

The charge given concerning corroboration of an accomplice's testimony was not subject to the deficiency present in *Chapman v. State,* 109 Ga. 157 (34 SE 369) (1899) and *Harrison v. State,* 143 Ga. App. 509 (239 SE2d 196) (1977). The jury were adequately instructed that all the state's evidence added together must establish guilt beyond a reasonable doubt, and that the presence and participation by the defendants must be established beyond a reasonable doubt.

Both defendants allege that the court erred in not defining conspiracy for the jury while allowing them to impute the acts of one defendant to another. We find the charges on conspiracy to be complete. A portion of that charge reads as follows; ". . .[W]here two or more persons conspire to rob another and one in furtherance of the common design to rob kills the person intended to be robbed, such killing is a probable consequence of the unlawful design to rob and all of the conspirators are guilty of murder. . . .[I]t is not necessary that the crime of murder should be a part of the original design, the

conspiracy, but it is enough that it be one of the incidental and probable consequences of the execution of the design, the conspiracy of the parties, and should appear at the moment to one of the participants to be expedient to the common purpose. In such case, the intent and act of the slayer is imputable to the other party . . ." The evidence showed that two or more persons were involved in the crime, and therefore it was not error to charge the jury on conspiracy. *Battle v. State,* 231 Ga. 501 (202 SE2d 449) (1973). By so doing, the judge did not imply to the jury that he presumed that a conspiracy existed. It was not error to fail in absence of a request to give a definition of conspiracy. *Snead v. State,* 127 Ga. App. 12, 13 (192 SE2d 415) (1972).

Taken as a whole, the charge given by the court concerning the necessity for corroboration of an accomplice's testimony was adequate. Perhaps the court would have charged more fully on the necessity for corroborating evidence of identity if such evidence had been less voluminous. In any event, the two accomplices corroborated each other completely with respect to both defendants' identity and participation in the crime. *Hill v. State,* 236 Ga. 831, 833 (225 SE2d 281) (1976) cited by appellants for the proposition that the charge was inadequate, did not find error in the charge. Hill's conviction was reversed on an evidentiary point: no corroboration of his accomplice's testimony connected *him* with the crime. There is no such failure of proof in the instant case.

All the enumerations have been determined to be without merit, and the convictions are accordingly affirmed.

*Judgment affirmed. All the Justices concur.*

Argued September 13, 1978 — Decided December 5, 1978 — Rehearing denied December 19, 1978, in Case No. 33933.

*R. David Botts, Ronald Arthur Lowry,* for appellant (Case No. 33932).

*Henning, Chambers & Mabry, Ronald Arthur Lowry,* for appellant (Case No. 33933).

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Tom Hayes, R. David Petersen, Assistant District Attorneys, Arthur K. Bolton, Attorney General, G. Stephen Parker, Assistant Attorney General,* for appellee.