## 70675. THOMAS v. THE STATE.
(337 SE2d 344)

BEASLEY, Judge.

From his conviction for theft of a financial transaction card, the defendant appeals.

1. During the course of defense counsel's argument to the jury an objection was interposed by the state. In ruling upon the objection, the trial court admonished the jury that the law was not what counsel stated it was but they should take the law as given in the court's charge. He then added "If I am in error, I can be corrected. This is not the final end." Defense counsel moved for a mistrial urging that the trial court had made reference to the power of appellate courts to reverse or change decisions made at the trial level. The trial court denied the motion but subsequently instructed the jury that their decision was final and they should disabuse their minds of what he had said or of any inference that might arise therefrom.

While it has been repeatedly held that references should not be made to reviewing courts except to cite their decisions (*Price v. State*, 149 Ga. App. 397, 400 (2) (254 SE2d 512) (1979)), the ratio decidendi is this might impermissibly suggest that there could be a conviction and the court's or jury's mistakes would be corrected on appeal. *Floyd v. State*, 135 Ga. App. 217, 218 (2) (217 SE2d 452) (1975).

Here the court was emphasizing that he and not counsel had the responsibility of correctly imparting the legal principle to the jury. The statements made in no way tended to convey or intimate any opinion by the trial court or lessen the sense of responsibility of the jurors. *Hood v. State*, 157 Ga. App. 282, 285 (6) (277 SE2d 261) (1981); *Bearden v. State*, 159 Ga. App. 892, 893 (285 SE2d 606) (1981); *Mention v. State*, 171 Ga. App. 116 (1) (318 SE2d 765) (1984); *Scott v. State*, 229 Ga. 541, 546 (3) (192 SE2d 367) (1972); *Thomas v. State*, 242 Ga. 712, 714 (2) (251 SE2d 294) (1978). Moreover, the instructions to the jury served to ameliorate any possibility of harm and afterwards defense counsel neither renewed the motion for mistrial nor requested that any further action be taken. *Cherry v. State*, 220 Ga. 695, 697 (5) (141 SE2d 412) (1965).

2. It is contended the trial court's charge on incriminatory admissions was error because the defendant's statements as related by the state's witnesses were purely exculpatory.

The salient principle here is "[d]eclarations made with an exculpatory object may have an inculpatory effect." *Fletcher v. State*, 90 Ga. 468 (3) (17 SE 100) (1892). "Whether a statement intended to be

exculpatory has an inculpatory effect depends upon the view that the jury might take of it in connection with all other facts and circumstances disclosed by the evidence." *Johnson v. State*, 144 Ga. App. 568, 569 (2) (241 SE2d 458) (1978).

Here the defendant's statements were that he had never seen the credit card before and that the arresting officers "planted" it. However, the officers contradicted this and testified that the card was contained in some paper and fell out when they instructed defendant to empty his pockets. The court did not charge the jury that the statements were incriminatory but left that issue for its determination and merely instructed them as to the law on incriminatory admissions if the jury found any statements to be inculpatory. This was not error. *Birks v. State*, 237 Ga. 861, 863 (230 SE2d 294) (1976); *Pendergrass v. State*, 245 Ga. 626, 627 (1) (266 SE2d 225) (1980). The jury could consider the statement as a guilty denial, and it could reject the explanation of the denial as not credible.

3. The main thrust of defendant's enumerations of error concerns whether he could be convicted for violation of OCGA § 16-9-31 (a) (1) which provides: "A person commits the offense of financial transaction card theft when: . . . He takes, obtains, or withholds a financial transaction card from the person, possession, custody, or control of another without the cardholder's consent . . ."

The facts giving rise to the defendant's indictment and subsequent conviction are as follows. Jerome Davis was the "cardholder" (OCGA § 16-9-30 (2)) of a Citibank Mastercard (a financial transaction card or in this case simply a credit card). Residing in Alabama, he visited Atlanta around February 25, 1984, where he used his credit card during the course of the evening. While returning to Alabama he discovered his credit card was missing — presumably left behind at Johnny's Hideaway, the last place he utilized his card. He then called Citibank of New York and said he "had the card cancelled." Another card with a different identification number was subsequently issued to him. No additional charges were made on the credit card which was lost. Davis testified that he had not given permission to use the card to anyone, especially the defendant. On March 21, 1984, two detectives obtained an arrest warrant charging the defendant with burglary. That morning they found the defendant at a Dunk-n-Dine, arrested him and performed a search for weapons. He was then transported to the police station where a more thorough search was conducted. He was instructed to empty his pockets. There within a napkin or piece of paper was the credit card of Jerome Davis. One of the officers asked defendant what he was doing with a credit card with another's name on it. According to the officers' testimony, the defendant accused them of planting the card on him and stated he had never seen it before in his life.

Four contentions are made concerning the sufficiency of the evidence. a) There was no evidence of criminal intent — animus furandi. b) The term "withholding" as used in the code requires both possession of the card and use thereof. Here there was no unauthorized use and thus no basis for conviction. c) Permission to use the card here had been terminated and thus it was a "revoked financial transaction card" within the meaning of OCGA § 16-9-30 (9). Since the charge was withholding a financial transaction card and the proof showed one which was revoked the probata did not follow the allegata. d) Since the credit card here had been revoked, Davis had no right to it. His testimony that he had not given defendant permission to use or possess it was ineffective. Citibank was the party in control of the revoked card and no one on its behalf testified as to whom it did or did not permit to use or possess the card. Hence, it is argued there was no evidence of unauthorized possession or withholding "without the cardholder's consent." OCGA § 16-9-31 (a) (1).

(a) & (b) A crime consists of the joint operation of an act or omission to act and intention or criminal negligence. OCGA § 16-2-1. Since intent is a fact question seldom capable of proof by direct evidence (*Jones v. State*, 141 Ga. App. 17, 18 (232 SE2d 365) (1977)), it may be inferred and is manifested by circumstances connected with the perpetration of the offense. *Mallette v. State*, 119 Ga. App. 24, 26 (165 SE2d 870) (1969). Whether such requisite intent existed is a question for the trier of fact (OCGA § 16-2-6) and, on review, an appellate court will not disturb such factual determination unless it is contrary to the evidence and clearly erroneous. *Riddle v. State*, 145 Ga. App. 328, 330 (1) (243 SE2d 607) (1978).

The "intention" of OCGA § 16-2-1 "does not mean an intention to violate a penal statute but an intention to commit the act prohibited thereby." *Schwerdtfeger v. State*, 167 Ga. App. 19, 20 (1) (305 SE2d 834) (1983). Here the jury was authorized to find criminal intent from all of the circumstances provided defendant did intend to withhold the credit card without the cardholder's consent. See *Brown v. State*, 173 Ga. App. 264, 265 (326 SE2d 2) (1985).[1] This is the first crucial issue.

What is meant by "withhold?" *Slack v. State*, 159 Ga. App. 185, 187 (283 SE2d 64) (1981), contains an extensive discussion of that term. The court noted: "It is not difficult to envision a situation where an individual comes into possession of a credit card, without having actually stolen it, and without consent 'withholds' the card from the person, possession, custody or control of the owner. That is

---

[1] For a discussion of general in contrast to special intent see *United States v. Haldeman*, 559 F2d 31, 114 (D. C. 1976) and *Holloway v. McElroy*, 632 F2d 605, 618 (5th Cir. 1980).

the situation in the instant case, where, pretermitting *how* they obtained possession of Mr. Cogdill's credit card, appellant and her codefendant had it in their possession and 'withheld' it from him by using it without his consent." We therein approved Black's Law Dictionary definition: "The word 'withhold' is defined as '[t]o retain in one's possession that which belongs to or is claimed or sought by another.'" This court then held: "Evidence of recent unexplained possession and use of a stolen credit card is sufficient to support a conviction for theft by 'withholding' it from its rightful owner."

Defendant contends this case requires the union of possession and use in order to convict. The state argues that although both were present in the *Slack* case only possession need be shown, citing *Fegan v. State*, 154 Ga. App. 791, 792 (270 SE2d 211) (1980) (defendant in possession of nine credit cards, attempting to use one, convicted on nine counts), and *Harris v. State*, 166 Ga. App. 202 (1) (303 SE2d 534) (1983) (use of other identification of cardholders to cash checks held to provide "circumstantial evidence from which the jury could reasonably infer the defendant withheld and was retaining possession" of the credit card without the cardholder's consent). Obviously neither argument is entirely correct and the true meaning of withhold lies somewhere in the middle ground. If possession alone were sufficient that is what the code section would provide — overlooking any constitutional infirmities inherent in such a penal provision. On the other hand, while use certainly is one way to establish a wrongful withholding, it is not a sine qua non. Under OCGA § 16-9-33 (a) (1), financial transaction card fraud, the gist of the crime is use, as is specifically stated. If the legislature intended use to be a prerequisite to OCGA § 16-9-31 such term would have been included in the code section. Actually, in OCGA § 16-9-31 the gist of the crime is theft, a taking. Withholding is a species of taking, that is, once the card is obtained it is retained as opposed to being returned. The criminal act occurs even where possession of the card is obtained through innocent means when it is deliberately kept in contravention to the cardholder's right. In brief, as pointed out in the *Slack* case it is not possession but retention which is the vital element. Retention which is criminal is retention with criminal intent.

Therefore, our inquiry involves ascertaining whether there are facts and circumstances evincing an intention on the defendant's part to retain the card in opposition to the possessory right of the cardholder. Here it was approximately three weeks from the time the card was missing until it was discovered in defendant's possession. There is no evidence regarding when the defendant obtained the credit card. Under the circumstances would the defendant have to offer an explanation as to his possession of the card? See, e.g., *Byrd v. Hopper*, 234 Ga. 248 (215 SE2d 251) (1975) — guilt of theft "presumed" from re-

cent possession, unexplained; *Gaskin v. State*, 119 Ga. App. 593 (1) (168 SE2d 183) (1969). In our view an inference of guilt would not arise from unexplained possession absent any further showing since unlike a theft situation the original acquisition of the card need not be wrongful. Thus the basis for the inference of guilt which arises from the fact of the wrongful taking coupled with possession — the critical ingredients in a theft or burglary — is not present in an alleged violation of OCGA § 16-9-31 (a) (1). See *Williamson v. State*, 248 Ga. 47 (281 SE2d 512) (1981).

Besides the length of time the card was missing before being found in defendant's possession, there is an additional element present: the defendant's statement to the officers which was offered in explanation of why it was found on his person. The defendant's denial of any knowledge of the card and his accusation of its being planted by the officers, when rejected by the jury as it must have been, constituted a guilty denial[2] from which the jury could infer a deliberate retention and thus a criminal withholding of the card.

Construing the evidence in favor of the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the defendant withheld the financial transaction card as prohibited by OCGA § 16-9-31 (a) (1).

(c) The defendant contends that there is a fatal variance between the allegations and the proof because the evidence showed the card in question was a revoked financial transaction card. We find no merit in this argument.

OCGA § 16-9-30 (9) defines a revoked financial transaction card as one which is no longer valid because permission to use it has been suspended or terminated by the issuer. The evidence fails to show the card was revoked, but rather that the cardholder/victim contacted the issuer and cancelled the card. Thus, the termination was initiated by the cardholder and in no way constituted an action contrary to his interests.

Even if there were a technical revocation, although cancellation must be the preferred terminology in this situation, the result is the same. Most important here is that OCGA § 16-9-31 (a) (1) makes no distinction between revoked and unrevoked financial transaction cards. Again, where the legislature intended revoked to be considered the terminology was used in the pertinent section. See OCGA § 16-9-33 (a) (1) and (b) (1). Therefore, whether the card was revoked or not is not an element of the offense. An obvious reason for this failure to make a distinction lies in the fact that a revoked or cancelled card may be used to unlawfully obtain goods or items of monetary value or

---

[2] Inculpatory rather than exculpatory. See Division 2 of this opinion.

unlawfully as identification or as evidence of creditworthiness.

(d) The defendant contends that because the card was revoked ownership was in the issuer and the case against him must fall since there was no evidence that the issuer did not authorize him to use the card.

The statutory language is clear that the withholding is without the consent of the cardholder. The cardholder was Davis, the person named on the face of the financial transaction card for whose benefit it was issued. OCGA § 16-9-30 (2); *Rowland v. State*, 124 Ga. App. 495, 496 (1) (184 SE2d 495) (1971). He denied the defendant had authority to use the card. There was no burden on the state to establish that defendant had no authority from the issuer, Citibank, to use the card.

This enumeration of error has no merit.

4. The argument that the trial court erred in instructing the jury that the state need not actually prove the defendant used the card is meritless as that was a correct statement of the law. See Division 3 (a) and (b) of this opinion.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 7, 1985.

*David R. Rogers*, for appellant.
*Robert E. Wilson, District Attorney, Susan Brooks, James W. Richter, Assistant District Attorneys*, for appellee.