S05A2039. PRICE v. THE STATE.
(625 SE2d 397)

HINES, Justice.

Willie Lee Price appeals his conviction for felony murder while in the commission of aggravated assault and the denial of his motion for new trial in connection with the fatal stabbing of Antonio Rush. He challenges the authority of the trial judge to preside over his trial; the sufficiency of the evidence of his guilt; the validity of his decision not to testify; certain charges to the jury; and the effectiveness of his trial counsel. Finding such challenges to be without merit, we affirm.[1]

Around 11:30 p.m. on January 12, 2003, Officer Demeester of the Atlanta Police Department saw Antonio Rush walking down the street near the intersection of Bankhead Highway and Bolton Road, and nothing appeared to be wrong. Approximately five minutes later, Demeester found Rush lying face down and motionless in front of the boarding house where Willie Lee Price ("Price") lived. Rush had been stabbed to death. There was not much blood on the ground, and there was no blood trail.

Between 11:00 and 11:45 that night, Price showed up at the apartment of his friends, Regina Walker and Donald Price. Price related that he "had got into it" with Rush, and that he "was just tired of people messing with him," and "taking from him." Price indicated

---

[1] The stabbing occurred on January 12, 2003. On January 28, 2003, a Fulton County grand jury indicted Price for malice murder, felony murder while in the commission of aggravated assault, and aggravated assault. Price was tried before a jury August 4-6, 2003, and found not guilty of malice murder but guilty of felony murder and aggravated assault. On August 6, 2003, he was sentenced to life in prison for felony murder; the trial court found the aggravated assault merged for the purpose of sentencing. Trial counsel filed a motion for new trial on August 7, 2003. New counsel was appointed to represent Price on September 23, 2003. New counsel filed an amended motion for new trial on November 22, 2004. The motion for new trial was denied on July 5, 2005. A notice of appeal was filed on August 1, 2005, and the case was docketed in this Court on August 19, 2005. The appeal was submitted for decision on October 11, 2005.

that he was upset because Rush had tried to take a beer from him. Price did not say that he was trying to defend himself or that Rush had attacked him.

Following his arrest, Price gave a videotaped statement in which he admitted that he stabbed Rush with a knife; however, he claimed that he did so after Rush attacked him with a weapon. Price claimed that Rush became aggressive after Price refused to give Rush his beer. Price said that Rush lunged at him with something in his hand, but he could not identify what it was because it was dark outside. Price said he attempted to defend himself by swinging his knife in a slashing motion.

The cause of Rush's death was a stab wound to the torso that penetrated Rush's aorta. The knife cut through three layers of clothing and went three-to-six inches into Rush's body. The stabbing caused extensive internal bleeding, but little external bleeding. The stab wound was consistent with a blade being thrust directly into Rush's abdomen, and not with the blade being used in a slashing motion. No knives or other weapons were found on Rush's body or at the scene of the crime.

1. Price contends that the senior judge who presided over his trial was without authority or jurisdiction to do so inasmuch as the senior judge's continuous reappointment for two-month terms was a de facto permanent appointment, thereby violating the provision in the State Constitution that all superior court judges are to be elected. See 1983 Ga. Const., Art. VI, Sec. VII, Par. I. However, Price's claim regarding the alleged infirmity of the trial judge's appointment was not asserted until Price's amended motion for new trial, and therefore, it is untimely and fails to present an issue for review in this appeal. *Strozier v. State*, 277 Ga. 78, 79 (1) (586 SE2d 309) (2003). Moreover, the senior judge's appointments by separate orders to preside over matters in the superior court for specified periods of time do not render him a de facto superior court judge in violation of the constitutional requirement that all superior court judges be elected. *Moreland v. State*, 279 Ga. 641 (2) (619 SE2d 626) (2005).

2. Price contends that he was entitled to directed verdicts of acquittal on the murder counts because the evidence was insufficient to prove murder. He argues that the evidence showed that when Rush approached him with an object in his hand, he swung his knife in an arcing motion to keep Rush away, and because Rush's mortal wound was caused by a thrusting motion, he could not have caused Rush's death; there was no blood on Price's clothes when they arrested him just a few hours after the incident; and although he may have committed aggravated assault when he swung at Rush, the State failed to prove that he caused Rush's death. But the argument is unavailing.

First, the forensic evidence belies Price's claim of how he wielded the knife in regard to the victim. Second, a lack of the victim's blood on Price's person or at the crime scene was easily explained by the fact that the stabbing caused extensive internal bleeding and little external bleeding. Third, the evidence was that the stabbing led to the victim's death.

In sum, Price's argument merely highlights his version of events and reasserts his claim of self-defense. Witness credibility is a matter for the jury, as is the question of justification; therefore, the jury was free to reject the claim that Price stabbed Rush in self-defense. *Harris v. State*, 279 Ga. 304, 306 (2) (612 SE2d 789) (2005). The evidence was sufficient to enable a rational trier of fact to find Price guilty beyond a reasonable doubt of the felony murder of Rush. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Price next contends that the trial court erred by failing on the record to ascertain whether he made a knowing, intelligent, and voluntary decision not to testify. He argues that the trial court should have conducted an inquiry on the record outside the presence of the jury regarding his waiver of the right to testify, and that there should be a new rule of procedure requiring an on-the-record colloquy. But Price failed to make such an objection at trial, nor did he raise the issue in his original or amended motions for new trial. In general, a defendant must object to the alleged impropriety at the time it occurs in order to afford the trial court the opportunity to take remedial action; otherwise, there is a waiver of the defendant's right to urge the alleged impropriety as error on appeal. *Bailey v. State*, 273 Ga. 303, 306 (3) (540 SE2d 202) (2001).

Even assuming the issue is properly before this Court, whether to testify in one's own defense is a tactical decision to be made by the defendant himself after consultation with his trial counsel, and generally, there is no requirement that a trial court interject itself into that decision-making process. *Burton v. State*, 263 Ga. 725, 728 (6) (438 SE2d 83) (1994). Moreover, the record shows that independently of defense counsel's announcement that the defense would rest following presentation of the State's case, Price told the trial court that he would not be presenting any evidence. Thus, the trial court established for itself that Price had elected not to testify in his own defense. Id.

4. Price further asserts that the trial court erred in two respects in its charge to the jury.

(a) In instructing the jury on the meaning of "forcible felony" for the purpose of a justification defense, the trial court stated,

> A forcible felony means any felony which involves the use of or threats of physical violence or physical force or violence

against any person. *[A]nd you know in this case the State contends that the defendant in this case was committing an aggravated assault while he intentionally made an effort to kill the defendant — the deceased.* (Emphasis supplied.)

Price argues that the italicized language was unbalanced and prejudicial to him because it improperly focused on his intent and acts, and that it constituted plain error because it amounted to the trial court's expression of opinion regarding his guilt. See OCGA § 17-8-57.

First, it should be noted that the defendant's intent and actions are certainly not irrelevant to the defense of self-defense inasmuch as its focus is the defendant's reasonable belief of the force necessary to defend himself. See OCGA § 16-3-21 (a). As to the assertion that the language at issue constituted an improper expression of opinion by the trial court, Price did not object or move for a mistrial on such basis; therefore, the claimed violation of OCGA § 17-8-57 is waived. *Paul v. State*, 272 Ga. 845, 848 (2) (537 SE2d 58) (2000). Even assuming review is not waived, Price does not prevail. OCGA § 17-8-57 is violated only "when the court's charge assumes certain things as facts and intimates to the jury what the judge believes the evidence to be. [Cit.]" *Sedlak v. State*, 275 Ga. 746, 748 (2) (d) (571 SE2d 721) (2002), quoting *Jones v. State*, 268 Ga. 12, 15 (5) (483 SE2d 871) (1997). Here, the trial court was not giving its opinion about the evidence, but was merely reciting what the State was contending. Moreover, jury instructions must be viewed as a whole to determine whether a charge contains error. *Whitaker v. State*, 275 Ga. 521, 524 (6) (570 SE2d 317) (2002); *Wilson v. State*, 275 Ga. 53, 59-60 (4) (562 SE2d 164) (2002). In this case, the trial court told the jury that anything that it said or did during the trial was not intended to and did not intimate, hint, or suggest, what the outcome should be, and that the verdict was entirely for the jury to determine. *Sedlak v. State*, supra at 749 (2) (d).

(b) Citing *Russell v. State*, 265 Ga. 203 (455 SE2d 34) (1995), and *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), Price maintains that the trial court erred in its instruction on voluntary manslaughter because it did not advise the jury that it must reject voluntary manslaughter before finding felony murder based on aggravated assault. He further argues that the court did not clearly charge the jury that it could not find felony murder if it found the existence of provocation and passion.

Initially, the trial court instructed the jury that voluntary manslaughter is committed if a person acts solely out of sudden, violent, and irresistible passion resulting from serious provocation, but the court did not charge that the jury could not find felony murder if it found the killing involved passion and provocation. However, prior to

deliberations, a juror asked for clarification of the voluntary manslaughter instruction, specifically the effect of a finding of voluntary manslaughter on the remaining charges, and the trial court then instructed the jury that if it found Price guilty of voluntary manslaughter, then it would not find him guilty of felony murder.

Trial courts are not required

> to follow an exact formula in instructing juries so long as the charge as a whole ensures that the jury will consider whether evidence of provocation and passion might authorize a verdict of voluntary manslaughter.

*Tessmer v. State*, 273 Ga. 220, 223 (3) (539 SE2d 816) (2000). Moreover, even when an improper sequential charge is given to the jury, there is no reversible error where it is shown that despite such charge the jury considered voluntary manslaughter. *Harrison v. State*, 268 Ga. 574, 575 (2) (492 SE2d 218) (1997).

Viewing the charge as a whole, it did not run afoul of *Russell* and *Edge*. Furthermore, questions the jury sent to the court during deliberations showed that they considered, but ultimately rejected, a finding of voluntary manslaughter. *Tessmer v. State*, supra at 224 (3).

5. Finally, Price contends that his trial counsel rendered ineffective assistance in three respects. But in order for Price to prevail on his claim of ineffective assistance, he must show that his attorney's performance was deficient and that the deficiency so prejudiced him that there is a reasonable likelihood that, but for the attorney's errors, the outcome of the trial would have been different. *Williams v. State*, 279 Ga. 600, 602 (3) (619 SE2d 649) (2005), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985). Price must overcome the strong presumption that his attorney's conduct falls within the broad range of reasonable professional conduct. *Williams v. State*, supra at 602 (3). This he does not do.

(a) Price alleges that his counsel was ineffective for failing to investigate and present an alibi defense. He claims that he advised counsel of a potential witness, Mr. Hughey, who was prepared to testify at trial that Price was with him during the time that Rush was stabbed to death. But Price fails to establish that not attempting to present an alibi defense amounts to deficient performance by his counsel. Indeed, it appears that trial counsel's decision not to call an alleged alibi witness was a matter of trial strategy and tactics within the evidence. See *Carr v. State*, 275 Ga. 185, 197 (5) (563 SE2d 850) (2002).

At the hearing on the amended motion for new trial, trial counsel testified he did not attempt to present an alibi defense because it was

inconsistent with the evidence and counsel's own investigation of the circumstances of the incident. Price told the police in the videotaped statement that he had fought with Rush and used the knife against him in self-defense, and Price also made statements to Walker, who testified at trial, that he had an altercation with Rush. Trial counsel also testified that he believed that a defense theory of an earlier altercation between Price and Rush was inconsistent with Price's statements and with what was revealed in the homicide investigation.

Assuming arguendo that the failure to call Hughey as a witness in order to raise a defense of alibi was deficient performance, Price cannot show that the outcome of his trial would have been different had Hughey testified. On the contrary, Hughey's testimony would not have established an alibi for Price. At the hearing on the amended motion for new trial, Hughey, who lived in the same boarding house as Price, testified that on the night of the murder, Price was watching television with him until the end of the 11:00 p.m. news, which concluded at 11:30 p.m. or 11:35 p.m.[2] Inasmuch as the murder occurred right outside the boarding house, this would not have ruled out Price being at the scene of the crime in the approximate time frame established by Officer Demeester's sightings of the victim.

(b) Price also contends that trial counsel was ineffective for "talking [him] out of testifying," thereby preventing him from having the final say in the matter.

Certainly, after being informed, it is the defendant and not the attorney that is to make the ultimate decision about whether the defendant will testify in his own behalf. *Dewberry v. State*, 271 Ga. 624, 626 (2) (523 SE2d 26) (1999). The attorney is to counsel the defendant about any advantage or peril in testifying, so that the defendant can make an informed decision, and that is exactly what happened in this case.

At trial, Price's attorney told the court that he had advised Price that he believed that it was in his best interest not to testify, but that the decision whether to do so was Price's. At the hearing on the amended motion for new trial, the attorney related that he had advised Price against testifying in order to avoid the risk of a potentially damaging cross-examination, and affirmed that Price made the final decision not to take the stand. What Price characterizes as "talking [him] out of testifying" was merely his own election to

---

[2] Hughey first indicated that the newscast was over at 11:30 p.m., but on further direct examination by Price's attorney, Hughey testified that the program concluded at 11:35 p.m.

follow the reasonable tactical advice of his lawyer, and there is no basis for complaint. *Doctor v. State*, 275 Ga. 612, 615 (4) (d) (571 SE2d 347) (2002).

(c) Price further complains that trial counsel failed to object during the State's closing argument when the prosecutor made comments implying "that in order to protect their loved ones, the jury should convict [Price]," and that this "baited" the "jury into believing that [its] only opportunity to prevent crime in general [was] to convict in this case."[3] But the complaint is unavailing for Price cannot show deficient performance by counsel, much less that the proceedings would have been different absent this alleged deficiency.

"A prosecutor may appeal to the jury to convict for the safety of the community or to send a message to others that criminal activities will be punished," and "may also impress on the jury its responsibility in that regard." *McClain v. State*, 267 Ga. 378, 385 (4) (477 SE2d 814) (1996). Moreover, trial counsel did object to the line of argument after the prosecutor stated that the jury had the opportunity to "stop violence," and the trial court sustained the objection.

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 17, 2006 —
RECONSIDERATION DENIED FEBRUARY 13, 2006.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Laurie M. Hughes, Assistant Attorney General*, for appellee.

---

[3] Price cites the following statements by the prosecutor:
And with a trial and with jury service, you now have an opportunity to do something on behalf of your community. . . . And Antonio Rush was as much — was as much a member of your community as your loved ones.