## S10A1661. GIBSON v. THE STATE.
(706 SE2d 412)

MELTON, Justice.

Hector Gibson was tried and found guilty by a jury of felony murder, armed robbery, and possession of a firearm during the commission of a crime relating to the shooting death of Vipin Patel.[1] Among other things, Gibson contends on appeal that the trial court erred by referring to the appellate review of his case when responding to a jury question about trial exhibits that were not sent out with the jury. For the reasons set forth below, we reverse.

1. Viewed in the light most favorable to the verdict, the record shows that on December 23, 2005, at approximately 7:00 a.m., Patrick Grant drove Anthony Haynes, Jonathan Johnson, Harry Newkirk, and Gibson to a Kwik Way store in a stolen Mitsubishi Montero. When the men arrived at the Kwik Way store, Johnson, Haynes, and Newkirk exited the vehicle and entered the store with the intent of committing a robbery. Three minutes later, Gibson also entered the store, where Patel was working as the clerk. One of the men ordered Patel to get down on the floor, but Patel pushed a panic button to alert police. Gibson shot Patel, who later died from a gunshot wound to the chest. The four men then ran to the vehicle

---

[1] On March 8, 2006, Gibson was indicted for malice murder, felony murder, armed robbery, and possession of a firearm during the commission of a crime. Gibson was found guilty on March 6, 2008 of felony murder, armed robbery, and possession of a firearm during the commission of a crime. On March 6, 2008, Gibson was sentenced to life plus five years. The trial court merged the armed robbery with the felony murder count for purposes of sentencing. Gibson filed a motion for new trial on March 7, 2008, and an amended motion on June 15, 2009. On April 27, 2010, the motion was denied. Gibson's timely appeal was docketed in this Court to the September 2010 term and submitted for decision on the briefs.

where Grant was waiting, taking the cash register and cigarette boxes with them. As the men were leaving the store, Tony Maxwell, a frequent patron of the store, saw Newkirk and Haynes entering the Montero, but could not see the vehicle's other occupants. Maxwell phoned 911 to report these observations, as well as the vehicle's license plate number. Maxwell later identified Newkirk and Haynes as the two persons he observed leaving the store. The men sped away in the car, but soon ran out of gas. The men exited the car, scattering in different directions. Gibson and Johnson fled to a nearby cemetery, where Gibson disposed of the gun. Police recovered the cash register from a wooded area, a shell casing from the murder weapon in the store, Gibson's fingerprints in the vehicle, and cash register tape and cigar casings near the vehicle. Gibson was not apprehended until December 28, 2005. Gibson then directed the police to the gun in the cemetery and a black pistol grip in Johnson's home. Grant testified at trial that Gibson admitted to him that he shot Patel. This evidence was sufficient to enable a rational trier of fact to find Gibson guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Price v. State*, 280 Ga. 193 (2) (625 SE2d 397) (2006).

2. Gibson argues that, by referring to the appellate process in its answer to a question from jurors during deliberations, the trial court erred. See OCGA § 17-8-57. We agree.

The record shows that the jury, during deliberations, sent a note to the trial court stating, "We'd like to have all of the evidence. Have only exhibits through 72." The trial court responded:

Let me tell you that you have all of the evidence, which by law, you are entitled to. There are several things that, if I give them to you, *we would have to try the case all over again.* . . . Some evidence is considered to be such that it's disadvantageous for you to have it out with you, particularly in regard to statements and things like that. They are supposed to be read like any other testimony, and *it would be reversible error* for me to give you all the exhibits.

(Emphasis supplied.) These statements improperly referred to the availability of appellate review, thus intimating that Gibson was in fact guilty and would need to appeal his forthcoming conviction.

This Court addressed a similar statement in *Faust v. State*, 222 Ga. 27 (148 SE2d 430) (1966). There, the trial court instructed the jury: "there are certain entries which cannot be removed from the indictment, and I am of the opinion it would be improper and maybe *reversible error* by the Appellate Court if I allowed you to see the indictment with these several entries hereon." Id. at 28-29 (2)

(emphasis in original). We found that these statements could convey to the jury that the entries were unfavorable to defendant and "that the court itself believed the defendant would be found guilty, since only the defendant can appeal from a verdict in a criminal case." Id. at 29 (2). This Court was particularly concerned that the jury may draw inferences about the content of the indictments. Based on these reasons, as well as the rule that courts should not reference appellate courts, except to cite their decisions, we held the trial court's statements to be reversible error.[2] Id. See also *Price v. State*, 149 Ga. App. 397, 400 (2) (254 SE2d 512) (1979) (judge's statement "If I make an error then there is [sic] two Courts ahead of me in Atlanta . . . If I make an error at law they are going to reverse this case and send it back," intimated to the jury that the trial judge thought the defendant would be convicted); *Hollis v. State*, 215 Ga. App. 35 (5) (450 SE2d 247) (1994) (judge's comment that the Supreme Court would have a chance to review the record of the case at hand intimated the trial judge's opinion that the defendant would be convicted).

In the present case, the statements regarding potential error could have intimated to the jury that the requested exhibits were harmful to the defendant and that the trial court believed the defendant was guilty. This, in turn, may have caused undue focus on the exhibits being withheld and lessened the jury's sense of responsibility for the verdict. The jurors are presumed to be intelligent people, and the trial court's comments could have logically led them to the conclusion that "the trial court was telling them that after the trial had ended, defendant and his counsel would be cast in the role of 'excepting' to what had taken place during the trial — in other words, that they would lose the case and defendant would be convicted." (Emphasis omitted.) *Floyd v. State*, 135 Ga. App. 217, 218-219 (217 SE2d 452) (1975). As in *Faust*, where this Court held that the contents of the unknown indictment entries could convey that the entries were harmful to the defendant, the trial court's statement that there was certain evidence that could be considered "disadvantageous" could have led the jury to believe that the exhibits were actually disadvantageous or harmful to Gibson and any defenses he presented. This prejudice, coupled with the reference to the reviewing courts at a crucial point in the trial, thus constituted reversible error.

Although trial counsel failed to object to the trial court's

---

[2] Not all comments regarding reviewing courts are reversible error. Mere abstract references to appellate courts, which do not convey the trial court's opinion, are not necessarily reversible error. However, the comments at issue here do not fall into that category.

response during the trial, the objection was not waived since violations of OCGA § 17-8-57 are subject to plain error review. Thus, even though trial counsel failed to preserve the issue by objecting, review is still proper under the plain error rule, as it applies where the trial judge, in violation of OCGA § 17-8-57, has expressed or intimated an opinion as to the guilt of the accused. *Brooks v. State*, 281 Ga. 514 (2) (640 SE2d 280) (2007) (citing *Paul v. State*, 272 Ga. 845 (3) (537 SE2d 58) (2000)); *State v. Gardner*, 286 Ga. 633 (690 SE2d 164) (2010).

To reach the opposite conclusion, the dissent argues that this Court should simply choose not to follow *Faust*, supra. In fact, the dissent goes so far as to say that this Court has simply chosen not to follow *Faust* in the past, despite the fact that it remains binding precedent. There is, however, no proof of the dissent's overreaching assumption. As pointed out by the dissent, itself, this Court has cited *Faust with approval* in *Walker v. State*, 255 Ga. 251 (2) (336 SE2d 752) (1985). The *Walker* case is wholly distinguishable on its facts from the present case; it dealt with a trial court's admonishment of a sleeping juror, not a statement regarding evidence. *Walker* also resulted in a different outcome based on the concept of waiver. As a result, *Walker* does not, in any rational way, support the dissent's assumption that this Court has thrown *Faust* by the wayside. It is clear, then, that this Court has not disregarded *Faust*. To the contrary, *Walker* reasonably leads only to the opposite conclusion — *Faust* remains the law. As a result, the dissent's proposition that we should circumvent this binding precedent merely because we dislike it must be rejected.

3. Because we conclude that the language complained of was reversible error, we need not reach Gibson's other enumerations of error.

*Judgment reversed. All the Justices concur, except Carley, P. J., and Nahmias, J., who dissent.*

NAHMIAS, Justice, dissenting.

Division 2 of the majority opinion extends *Faust v. State*, 222 Ga. 27 (148 SE2d 430) (1966), a decision that was poorly reasoned and is inconsistent with this Court's earlier and later precedent, to reverse a murder conviction based on a remark by the trial court that defense counsel did not deem worthy of objection and the jury is unlikely to have interpreted as the majority suggests. This Court will apparently now have a rule that a trial court's passing mention of "reversible error" will require automatic reversal of a criminal conviction. I do not believe such a rule is required by our precedent or supported by reason, and I therefore dissent.

## 1. *Cases Before Faust*

This is not a new issue for this Court. More than 150 years ago, the Court considered a claim that the trial court had erred in referring to the appellate process during its jury charge in a murder case. In *Mitchell v. State*, 22 Ga. 211 (1857), the alleged error was that the trial judge had charged the jury that he "was responsible to the Supreme Court, if he committed an error; that he was a fallible being and liable to err, and that they might, under the statute, decide against his opinion of the law, if they thought proper to do so." Id. at 227. The Court cautioned that "all reference to the Supreme Court, either by [trial court] or counsel, by way of menace or otherwise, except to cite its decisions, had best be dispensed with." Id. at 233. But the Court did *not* reverse the conviction, holding that "[t]his complaint is not sustained by the bill of exceptions." Id.

The issue arose again in 1944 in the context of comments made by counsel for the State. See *Bryant v. State*, 197 Ga. 641 (30 SE2d 259) (1944). In a capital murder case, the prosecutor objected to a question posed to a witness by defense counsel, then said " 'I will withdraw my objection; the Supreme Court — I am scared of the Supreme Court.' " Id. at 655. The trial court denied defense counsel's motion for a mistrial, which was based on the argument that the comment directed the jury's attention to the defendant's prior conviction, which the Supreme Court had reversed. See id. The Court repeated the admonition from *Mitchell*, that "it is better practice, during the trial of cases, for the court and counsel not to make references to the power of the reviewing courts except to cite their decisions as authority." 197 Ga. at 655. As in *Mitchell*, however, the Court did *not* reverse the conviction based on the reference to the appellate court, instead holding that "the statement here made by the [prosecutor] could in no wise be so construed as prejudicial to the accused." Id. The Court referred to the previous division of its opinion, which explained that "any other conclusion would require this court to give the jury credit for a knowledge of legal procedure and a power of analytic reasoning that is beyond the requirements of qualification for jury service" Id. at 654.

## 2. *Faust's Dubious Reasoning*

Then came *Faust*, the 1966 decision of this Court on which the majority exclusively relies and which was the basis of the Court of Appeals' decisions cited by the majority. See Maj. Op. at 618-620. The Court first reversed Faust's (and a related defendant's) conviction based on an erroneous jury charge on witness credibility. See 222 Ga. at 28. The Court went on, however, to address the concluding portion of the jury charge, where after explaining the form of the verdict, the

trial court instructed:

> So, Gentlemen, whatever your verdict may be, let it be stated in open court by your foreman after you have reached a verdict, because there are certain entries which cannot be removed from the indictment, and I am of the opinion it would be improper and maybe reversible error by the Appellate Court if I allowed you to see the indictment with these several entries hereon.

Id. at 28-29.

The *Faust* Court first explained that this charge could have conveyed to the jury the impression that the parts of the indictment that were referenced, but which the jury was not allowed to see, were unfavorable to the defendant. See id. at 29. But the Court went further, saying that advising the jury "as to possible reversal by the appellate court for allowing them to see the entries could have conveyed the impression that the court itself believed the defendant would be found guilty, since only the defendant can appeal from a verdict in a criminal case." Id. The Court then noted the previous warnings against "reference to the reviewing courts by court or counsel, except to cite their decisions," citing *Mitchell* and *Bryant* — the only authorities cited in the opinion — and concluded that the jury charge was reversible error. 222 Ga. at 29.

The result of Division 2 in *Faust* may be correct, because the jury was told about material not in evidence that suggested additional criminal conduct by the defendant (the indictment being the document that charges a defendant with crimes). But the second part of the Court's reasoning does not hold up to scrutiny. *Mitchell* and *Bryant* did warn trial courts against reference to appellate courts, but both cases nevertheless *affirmed* the convictions at issue; those decisions do not support the conclusion that such references are reversible error. Even more dubious is *Faust*'s assertion that the trial court's reference to possible reversal by the appellate court "conveyed the impression that the court itself believed the defendant would be found guilty, *since only the defendant can appeal from a verdict in a criminal case.*" Id. Judges know that only the defendant can appeal the verdict in a criminal case, and most lawyers probably know it too (or at least learned it at some point during their legal education); and perhaps because judges spend so much of their time dealing with each other and with lawyers, judges may think that the everyday citizens who sit on juries know it too. But I doubt that jurors untrained in the law are focused on this feature of American double jeopardy law — which, by the way, was not so clearly the law in 1966 when *Faust* was decided. See *Palko v. Connecticut*, 302 U. S.

319, 328 (58 SC 149, 82 LE 288) (1937) (holding that the federal constitution's double jeopardy and due process provisions do *not* preclude a state's appeal of an acquittal based on substantial legal errors made during a criminal trial), overruled by *Benton v. Maryland*, 395 U. S. 784, 794 (89 SC 2056, 23 LE2d 707) (1969). The *Faust* Court did not offer any empirical support for its assumption about jurors' awareness of this legal doctrine; my own experience is that many lay people are unaware of it and some are surprised by the notion that the State does not have the same ability as the defendant to appeal a verdict.

Moreover, we do not apply this assumption generally in criminal cases. If the rule that only defendants can appeal the verdict in a criminal case is something we can assume jurors already know, there would be no harm in trial courts or counsel saying it to juries. But to my knowledge, that is never done. Indeed, we might find explicit focus on this point in a criminal case, in a charge or argument for example, to be error, because it could improperly lessen the jury's sense of responsibility for a guilty verdict (if jurors know their decision to convict will be "double-checked" on appeal, while their decision to set free the accused criminal will be final), or because it could promote jury nullification (if jurors know they can acquit without regard to the law or the facts because the State cannot appeal). See *Watkins v. State*, 265 Ga. App. 54, 56 (592 SE2d 868) (2004) (holding that, while the jury has the de facto power of nullification, a defendant is not entitled to a nullification instruction).

Finally, even assuming the *Faust* assumption about juror knowledge of double jeopardy law could be sustained, the Court's conclusion required another deductive leap. The trial court did not mention the defendant or directly state an opinion about her guilt; its statement could also be understood as an explanation that the court was acting to protect the jury's verdict, whatever it may be. In other words, when the trial judge said, "it would be improper and maybe reversible error by the Appellate Court if I allowed you to see the indictment with these several entries," why would the jury necessarily infer that the trial judge meant "because *I believe the defendant is guilty and I* do not want her conviction to be reversed on appeal," as opposed to "because *you* may decide to find her guilty and I do not want *your* potential decision reversed on appeal"?

In addition, if the *Faust* Court truly believed that the trial court's charge expressed an opinion about the defendant's guilt, then its previous (and defensible) discussion of the prejudice arising from the court's reference to the indictment excerpts would be unnecessary, because a trial court's intimation of an opinion about guilt in

violation of OCGA § 17-8-57[3] requires reversal of the conviction without regard to prejudice or harm. See *Patel v. State*, 282 Ga. 412, 414 (651 SE2d 55) (2007).

3. *This Court Has Not Followed Faust*

As discussed by the majority, see Maj. Op. at 618-620, the Court of Appeals has followed *Faust*'s dubious logic in a few cases. But this Court has not, until today. In the past 45 years, this Court has cited *Faust* only once, in a decision that is inconsistent with the majority's conclusion that a trial court's reference to reversible error during a jury charge requires reversal. In *Walker v. State*, 255 Ga. 251 (336 SE2d 752) (1985), the trial court interrupted its jury charge and told a juror, " 'Sir, are you able to listen with your eyes closed? It's very important that you listen. I realize it's dull and that sort of thing, but *the case would be reversed* if for any reason you didn't hear every part of this charge.' " Id. at 251 (emphasis added). On appeal, Walker relied, like the majority does, on *Faust* and *Floyd v. State*, 135 Ga. App. 217 (217 SE2d 452) (1975). But the Court rejected the argument and distinguished those cases, holding that, "[t]here being no objection to the inadvertent reference during the court's admonishing a juror and considering the context of the statement and strength of the evidence, we find no grounds for reversal." *Walker*, 255 Ga. at 251.

Similarly, in *Thomas v. State*, 242 Ga. 712 (251 SE2d 294) (1978), the trial court made statements, "in colloquy with counsel concerning an evidentiary ruling, to the effect that his rulings were correct *until reversed by a higher court*." Id. at 714 (emphasis added). Without mentioning *Faust*, the Court rejected the argument that "this impermissibly suggested to the jury that their mistakes might similarly be corrected on appeal," explaining that the court was "merely emphasiz[ing] the finality of the ruling" it had made. Id. The Court of Appeals has similar cases, also not acknowledged by the majority. See *Nobles v. State*, 201 Ga. App. 483, 492 (411 SE2d 294) (1991) (rejecting the defendant's reliance on *Faust* where, in recharging the jury on voluntary manslaughter, the trial court stated that it is "always dangerous for a judge to go beyond the stilted language of the law, because you never know what the appellate court might think of what you say here"); *Thomas v. State*, 176 Ga.

---

[3] OCGA § 17-8-57 provides as follows:

It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

App. 771 (337 SE2d 344) (1985) (rejecting argument based on *Floyd* where the trial court told the jury, after ruling on an objection during closing argument, " 'If I am in error, I can be corrected. This is not the final end,' " and defense counsel moved for a mistrial on the ground that "the trial court had made reference to the power of appellate courts to reverse or change decisions made at the trial level").

The majority may be trying to distinguish these cases when it says that "[m]ere abstract references to appellate courts, which do not convey the trial court's opinion, are not necessarily reversible error." Maj. Op. at 619 n. 2. But the majority gives no example of what that means, and the comments regarding appellate courts in the four cases just discussed were no more "abstract" than the comments in this case — which did not even refer to an appellate court.

4. *This Case*

Contrary to the majority's conclusion, see Maj. Op. at 619, the first, more defensible part of *Faust*'s reasoning does not apply to this case. A trial court's reference to portions of an *indictment* that were *not shown to the jury* conveys the impression that there exists additional, unfavorable information about the defendant, because indictments are generally not good for a defendant; indeed, the jury might speculate that the unseen excerpts are really bad, since " '[w]hatever is unknown is magnified.' " *Faust*, 222 Ga. at 29 (quoting the Roman historian Tacitus). But the same cannot be said about the trial court's comments in this case, which pertained to *evidence* that *the jury had heard* during the trial and wanted to see again while deliberating. Unlike an indictment, evidence is not by its nature favorable or unfavorable to the defendant; it is relevant and admissible information that the jury has discretion to consider favorably or unfavorably. Nor was there anything for the jurors in this case to speculate about; by definition, they had heard and seen all of the evidence admitted during the trial, and the only issue was whether they got to see certain evidence again or had to rely on their memories (something jurors must do with regard to much evidence in a case, including all testimony).

Between its references to re-trial and reversible error, the trial court explained to the jury that it was not going to provide all the evidence the jury had asked for because "[s]ome evidence is considered to be such that it's disadvantageous for you to have it out with you, particularly in regard to statements and things like that. They are supposed to be read like any other testimony." The majority asserts that the trial court's use of the term " 'disadvantageous' could have led the jury to believe that the exhibits [withheld] were actually disadvantageous or harmful to Gibson and any defenses he

presented." Maj. Op. at 619. In fact, the court said that the evidence was considered "disadvantageous *for you*" to have during deliberations — clearly referring to the jury, not to Gibson (or the State). Indeed, we cannot say that those exhibits were favorable or unfavorable to Gibson. The State did not ask to show them to the jury, nor did Gibson seek to have them withheld; it was the jury that asked for them, and we have no idea what role that evidence played in the jury's deliberations and ultimate verdict.

In context, it appears that what the trial court was doing was trying to explain to the jury Georgia's somewhat unusual continuing-witness rule as the legal reason for the court's ruling on their reasonable request to have all of the exhibits in the jury room. See *Davis v. State*, 285 Ga. 343, 348 (676 SE2d 215) (2009) (explaining that " '[i]n Georgia, the continuing witness objection is based on the notion that written testimony [like a defendant's written statement] is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand,' " and it is considered " 'unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once' " (citation omitted)). Although such explanations may create issues for appeal, it is well-established that "[r]emarks of the trial court assigning a reason for its ruling are neither an expression of opinion nor a comment on the evidence" in violation of OCGA § 17-8-57. *Young v. State*, 269 Ga. 490, 493 (500 SE2d 583) (1998). Thus, if *Faust*'s holding depends on the trial court making an "[inappropriate] statement regarding evidence," Maj. Op. at 620, *Faust* is distinguished from this case, where there was no inappropriate statement regarding the evidence.

That leaves the majority's conclusion dependent on the second part of *Faust*'s reasoning — the trial court's reference to the appellate process — with all of its flaws discussed above, none of which the majority addresses. Those flaws are if anything magnified in this case, where there were references to reversible error and the possibility of a re-trial but no reference to the appellate court as there was in *Faust* (and *Mitchell* and *Bryant*). The jury would have to know or infer that the trial court wanted to avoid error because it believed the defendant was guilty, rather than because avoiding error is what courts are supposed to do; that only the defendant could appeal the jury's verdict, so that "reversible" error would mean reversal in the defendant's rather than the State's favor; and that the error would be reversed by someone other than the trial court itself. Those inferences are not inconceivable, but they are not inevitable or even obvious. In my view, Gibson's argument simply "require[s] this court to give the jury credit for a knowledge of legal

procedure and a power of analytic reasoning that is beyond the requirements of qualification for jury service'' and does not support reversal of his conviction. *Bryant*, 197 Ga. at 654.

Finally, if the majority were right that the trial court's statements expressed its opinion about the defendant's guilt, the majority's discussion of harm and reversible error, see Maj. Op. at 619, is as irrelevant as it was in *Faust*. As the majority recognizes in the last paragraph of its opinion, reversal is mandatory when a judge intimates an opinion about the accused's guilt in violation of OCGA § 17-8-57, without regard to objection at trial or analysis of harm.

5. *Conclusion*

The Court may need to reiterate that "it is better practice, during the trial of cases, for the court and counsel not to make references to the power of the reviewing courts except to cite their decisions as authority," *Bryant*, 197 Ga. at 655, and add that this may include use of terms like "reversible error." If the trial court here had followed that admonition, rather than trying to explain to the jury why it would not let them have the evidence they wanted to see again, this would be a much easier case on appeal. But the flawed reasoning of *Faust* went down the road toward converting a "better practice" into an inflexible rule, and today's majority unfortunately completes that journey. It will now apparently be "the rule that [trial] courts should not reference appellate courts, except to cite their decisions," Maj. Op. at 619 — and apparently even statements that may be inferred to refer to appeals (since the trial court here never mentioned appellate courts) will be sufficient to mandate reversal of criminal convictions pursuant to OCGA § 17-8-57, even in the absence of any objection at trial or a showing of substantial prejudice to the defendant.

I do not believe that the trial court's statements in this case intimated to the jury an opinion about the guilt of the accused, but instead simply explained that the court was trying to do its job of avoiding significant errors in the trial, and I do not believe that Gibson was otherwise prejudiced by the court's comments. Because the other errors that Gibson enumerates also would not require reversal, I would affirm his convictions, and I therefore respectfully dissent.

I am authorized to state that Presiding Justice Carley joins in this dissent.

DECIDED FEBRUARY 28, 2011.

*Steven L. Sparger*, for appellant.

*Larry Chisolm, District Attorney, Julayaun M. Waters, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K.*

*Smith, Senior Assistant Attorney General, Reggie A. Lampkin, Assistant Attorney General*, for appellee.