[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10430
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 14, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:05-cr-00371-JEC-CCH-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ORLANDO MARK WAYNE CLARKE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 14, 2011)

Before TJOFLAT, CARNES, and FAY, Circuit Judges.

PER CURIAM:

Orlando Clarke appeals his convictions for: (1) conspiracy to import at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(B)(iv), and 963; (2) conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(IV) and 846; (3) traveling in interstate commerce with the intent to distribute cocaine, in violation of 18 U.S.C. § 1952(a)(3); (4) importation of at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(1)(B)(iv); and (5) attempt to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(IV), and 846.

On appeal, Clarke argues that the government violated the rule of *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 1217 (1959), by failing to correct the materially false testimony of two of its witnesses, Darrien Meheux and Valerie Haynes. He also asserts that his trial counsel rendered ineffective assistance by failing to use telephone records to impeach Meheux's and Haynes's testimony that he had received telephone calls from a drug courier. Finally, Clarke contends that the district court plainly erred by failing to give a limiting instruction after the government redacted information from a summary chart that previously had been displayed to the jury in unredacted form. For the reasons stated below, we affirm.

2

I.

At trial, the government presented evidence that Clarke and Meheux had entered into a conspiracy to import drugs into the United States from Jamaica. Meheux testified that he and two of his associates, Valerie Haynes and Willie Stewart, worked as baggage handlers at the Atlanta airport. Clarke had contacts in Jamaica who would place bags filled with drugs on flights to Atlanta. When the flights arrived at the Atlanta airport, Meheux, Haynes, and Stewart would unload the drug-filled bags and take them out of the airport before they could be sent through customs.

According to Meheux, the conspiracy worked well until August 10, 2000, when one of the drug couriers, Terry Ann Chung, was caught by law enforcement. That morning, Clarke informed Meheux that a shipment of drugs would be arriving on a flight from Jamaica. Meheux and Haynes attempted to retrieve the drugs, but Clarke had given them the wrong bin number, so they were unable to find the bag before it was sent to customs. Meheux called Clarke to warn him that the bag had gone past him. Eventually, Meheux met up with Clarke in the lobby of the airport. At that point, Meheux testified, Clarke received a telephone call from Chung, stated that she had cleared customs. Meheux warned Clarke that it was a trap because there was no way that Chung could have made it through

3

customs with such a large amount of drugs in her suitcase. Clarke and Meheux eventually left the airport. Later that day, they spoke with Clarke's contact in Jamaica, who went by the name Richie Rich, to discuss what had gone wrong with the shipment.

During Meheux's testimony, the government displayed a summary chart of all of the calls made to and from Clarke's and Meheux's cellular telephones on August 10, 2000. The chart did not reflect any calls between Chung and Clarke on the date in question. The chart did indicate that Clarke had placed four calls to a Jamaican telephone number associated with Richie Rich. Neither the prosecutor nor Meheux mentioned the fact that Rich's name was on the chart. When the government sought to introduce this chart into evidence, Clarke argued that Rich's name needed to be redacted because the government had not established a connection between Rich and that particular telephone number. The government agreed to redact Rich's name from the chart. Clarke did not request a limiting instruction explaining the redaction, and the district court did not give one.

Valerie Haynes corroborated Meheux's testimony about Clarke's involvement in the conspiracy. Haynes recalled that the drug courier tried to call Clarke several times on the day that the drug shipment was seized, but Clarke did not answer any those calls. Clarke did not actually say that the courier was the one

4

who was calling, but Haynes inferred from Clarke's statements that it was her. Haynes explained that there were "a lot of phone conversations going on that particular day."

Agent Dennis McMichael was working at the Atlanta airport on August 10, 2000, when customs officials discovered two suitcases filled with cocaine. The tags on the suitcases indicated that they were the property of Terry Ann Chung. Agent McMichael eventually located Chung as she was walking around the airport and took her into custody. Special Agent Gregory Malloy discovered a piece of paper in Chung's purse that had a telephone number and the name "Wayne" written on it. Clarke's full name is Orlando Mark Wayne Clarke. Clarke's wife was the subscriber for that particular telephone number and Clarke was listed as the contact person on the bill. Antonio Dowd, a customer service agent for Air Jamaica, testified that Chung had twice asked him to page an individual named Wayne Clarke.

The jury returned a verdict of guilty with respect to all of the charges against Clark. Prior to sentencing, Clarke filed a motion to dismiss the indictment based on prosecutorial misconduct. Clarke argued that Meheux and Haynes had testified falsely when they stated that Chung had called Clarke on the day of her arrest because the telephone records in evidence showed that no such calls

occurred.  Clarke argued that the government was required to correct the false testimony.  He also asserted that his trial counsel, Turner, rendered ineffective assistance by failing to use the telephone records to impeach the testimony of Meheux and Haynes.

The district court denied Clarke's motion to dismiss the indictment.  The district court observed that Meheux's testimony about Chung calling Clarke was not necessarily false, even if no such calls were reflected in the telephone records.  The district court noted that Chung may have called Clarke on another cellular telephone that the government had never located.  The district court also pointed out that Chung could have spoken with Clarke's source in Jamaica, who may have then contacted Clarke.  Another explanation that occurred to the district court was that Clarke may have lied to Meheux about receiving a telephone call from Chung.  The court explained that Clarke may have been trying to convince Meheux to look for Chung so that, if the police were watching Chung, Meheux was the one who would be arrested.  Finally, the district court observed that Meheux simply may have been mistaken, which would not be surprising given that the events had occurred seven years before Clarke's trial.  The district court also explained that Haynes's testimony was not false because Haynes had "greatly qualified her knowledge of exactly who was calling whom that day."

Moreover, even if Meheux's and Haynes's testimony was inaccurate, the district court concluded that their testimony was not material because there was substantial independent evidence of a connection between Clarke and Chung. The court noted that Chung tried to page Clarke two different times while she was at the airport. In addition, the district court pointed out that Chung was carrying a piece of paper with Clarke's name and telephone number on it.

The district court also rejected Clarke's ineffective assistance claim. The court assumed without deciding that counsel had engaged in deficient performance by failing to use the telephone records to impeach Meheux's testimony. With respect to the prejudice prong, the district court noted that "abundant circumstantial evidence" showed that Clarke was planning to meet Chung at the airport. In addition, the district court determined that any impeachment as to the alleged telephone call would not have changed the jury's overall assessment of Meheux's credibility. Accordingly, the district court concluded that any impeachment of Meheux's testimony about the telephone call would not have changed the outcome of the case. Therefore, the court concluded that Clarke had failed to establish prejudice.

II.

A claim of prosecutorial misconduct presents a mixed question of law and fact that we review *de novo*. *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997). A defendant's right to due process is violated when a prosecutor fails to correct the false testimony of a government witness. *Napue*, 360 U.S. at 269, 79 S.Ct. at 1177. To obtain a reversal on the grounds that the government failed to correct false testimony, the defendant must establish that: (1) the contested statements were actually false, (2) the government knew the statements to be false; and (3) the statements were material. *United States v. Bailey*, 123 F.3d 1381, 1395 (11th Cir. 1997). To succeed on a *Napue* claim, the defendant must establish that the witness committed perjury. *Id.* at 1395-96. Simply showing a memory lapse, unintentional error, or oversight by the witness is insufficient. *Id.* False testimony is considered material if there is any reasonable likelihood that it could have affected the judgment of the jury. *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995).

In this case, Clarke has not shown that the government knew Meheux's and Haynes's testimony to be false. As the district court observed, there are several alternative explanations for the discrepancy between Meheux's testimony and the telephone records. For example, Clarke could have had another cellular telephone that the government did not know about. Another possibility is that Clarke lied to

Meheux about Chung's telephone call. In addition, Meheux could simply have been mistaken about the details of what happened that day. These explanations may be speculative, but the point is that the government did not necessarily know that Meheux was committing perjury when he testified that Chung had called Clarke.

Nor did the government know that Haynes's testimony was false. Although Haynes indicated that Chung had tried to contact Clarke, she explained that she was simply drawing an assumption from Clarke's and Meheux's statements. At most, the telephone records show that Haynes was mistaken, not that she was being untruthful. Therefore, Haynes's testimony cannot form the basis for a *Napue* claim. *See Bailey*, 123 F.3d at 1395-96 (explaining that a memory lapse, unintentional error, or oversight cannot support a *Napue* claim).

In addition, the testimony about the telephone calls was not material because the government introduced other evidence connecting Clarke to Chung. After she arrived at the airport, Chung twice asked an airline employee to page Clarke. She also was carrying a piece of paper with Clarke's middle name, Wayne, and Clarke's telephone number written on it. Because there was other evidence of a link between Clark and Chung, the testimony about the telephone call likely did not have any significant impact on the jury's verdict. Also, it is

9

doubtful that Meheux's and Haynes's testimony about this one detail affected the jury's credibility determinations. Because Clarke has not established that the government knew that Meheux and Haynes had testified falsely, or that the asserted false testimony was material, his *Napue* claim fails. *See Bailey*, 123 F.3d at 1395.

III.

An ineffective assistance claim presents a mixed question of law and fact that we review *de novo*. *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002). The defendant must show both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To establish deficient performance, a defendant must show that counsel acted unreasonably in light of prevailing professional norms. *Id.* at 688, 104 S.Ct. at 2065. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. If the defendant cannot satisfy the prejudice prong, we need not

10

address the deficient performance prong, and vice versa. *Id.* at 697, 104 S.Ct. at 2069.

We will not review a claim of ineffective assistance of counsel raised on direct appeal unless the district court addressed that claim and developed a record sufficient for our review. *Bender*, 290 F.3d at 1284. In this case, the district court considered and rejected Clarke's ineffective assistance claim after full briefing by the parties. The district court did not hold an evidentiary hearing, so it is unclear from the current record whether counsel's decision not to use the telephone records in cross-examining Meheux was a reasonable strategic decision or whether it amounted to deficient performance. There is, however, sufficient evidence in the record with respect to the prejudice prong of *Strickland*. Therefore, we can address the merits of Clarke's ineffective assistance claim.

Even assuming, as the district court did, that defense counsel provided deficient performance by not using the telephone records to impeach Meheux and Haynes, Clarke has not established prejudice. The telephone records were not particularly important as substantive evidence because, even if Chung did not call Clarke, other evidence established a link between Clarke and Chung. Chung paged Clarke twice after she arrived at the airport, and, after Chung was taken into custody, officers discovered that she was carrying a paper with Clarke's name and

11

telephone number written on it. Any cross-examination concerning the telephone records would not have cast doubt on the fact that Clarke was planning to meet with Chung at the airport.

In addition, defense counsel would not have been able to use the telephone records to impeach the credibility of Meheux or Haynes. As noted above, there are a number of reasonable explanations for the discrepancy between Meheux's testimony about the call and the telephone records. Had defense counsel raised the issue, Meheux may have responded by offering some of those explanations. In any event, the telephone call was a relatively small part of Meheux's testimony, so, even if counsel could have established that the call did not occur, it is unlikely that the jury would have rejected the rest of Meheux's testimony.

Also, the telephone records would not have given the jury a different impression of Haynes's credibility because Haynes already acknowledged having no first-hand knowledge of a conversation between Chung and Clarke and was only making an assumption that Chung was the person who was trying to call Clarke. If the call could not have occurred as Haynes described, that would simply show that her assumption as to that one detail was wrong, not that she was a dishonest or unreliable witness. Because any impeachment concerning the alleged telephone calls would not have changed the outcome of the trial, Clarke

12

has failed to demonstrate prejudice. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Accordingly, the district court properly denied Clarke's ineffective assistance claim.

## IV.

Clarke did not request a limiting instruction after Richie Rich's name was removed from the chart of telephone calls. Therefore, we are reviewing only for plain error. *United States v. Miranda*, 197 F.3d 1357, 1360 n.4 (11th Cir. 1999). "[B]ecause Federal Rule of Evidence 105, which provides for limiting instructions in appropriate circumstances, only operates upon request, the failure to give a limiting instruction is error only when such an instruction is requested." *United States v. Smith*, 459 F.3d 1276, 1297 (11th Cir. 2006) (citation, quotations, and alteration omitted). In many cases, it may be a good strategy not to request a limiting instruction because such an instruction could focus the jury's attention on potentially damaging evidence. *United States v. Barnes*, 586 F.2d 1052, 1059 (5th Cir. 1978).

Here, Clarke did not request a limiting instruction, and the district court was under no obligation to issue one *sua sponte*. *See Smith*, 459 F.3d at 1297. Moreover, a limiting instruction would simply have drawn the jury's attention to the fact that Rich's name had been on the chart, a fact that the government had not

13

emphasized when the unredacted chart was displayed to the jury. *See Barnes*, 586 F.2d at 1059. We conclude that the district court did not plainly err by failing to issue a limiting instruction in this case.

Accordingly, we affirm Clarke's convictions.

**AFFIRMED.**