S13A0319. MITCHELL v. THE STATE.

(742 SE2d 454)

THOMPSON, Presiding Justice.

After his conviction on charges of malice murder, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony related to the shooting death of Christopher Copeland, appellant Matthew Mitchell was sentenced to life in prison.[1] The trial court denied his motion for new trial, and he appeals, asserting the court erred by redacting portions of his statements to police, intimating an opinion as to his guilt in front of the jury, and exiting the courtroom during a critical stage of the proceedings. Finding no reversible error, we affirm.

1. Viewed in the light most favorable to the verdict, the jury was authorized to find that appellant and his girlfriend were robbed at gunpoint by associates of Copeland, causing tension between two rival groups. In retaliation, appellant and several other individuals fatally shot Copeland as he left a private club. Copeland was shot at

---

[1] The crimes occurred on September 20, 2007. Appellant was indicted on June 9, 2009, by a Fulton County grand jury on charges of malice murder, felony murder predicated on aggravated assault with a deadly weapon, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. He was tried before a jury on November 1-17, 2010, and found guilty of all charges. The trial court sentenced appellant to life in prison on the malice murder charge and a concurrent five-year term of imprisonment on the possession charge. The remaining verdicts merged or were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Appellant filed a motion for new trial on November 30, 2010, which he amended on January 25, 2012. The motion for new trial was denied on July 31, 2012. A notice of appeal was filed on August 9, 2012. The appeal was docketed to the January 2013 term of this Court and orally argued on February 20, 2013.

least 40 times from six different guns with wounds to the head, torso, and extremities. Appellant's girlfriend told police that appellant admitted to her his involvement in the crimes, and she led police to a handgun used in the crimes which was hidden under a board at appellant's former residence. Appellant initially denied owning the gun but later stated he purchased it from a friend and hid it when he learned it had been used in a crime.

We conclude the evidence adduced at trial was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant gave several recorded statements to police after his arrest. Because he was tried jointly with a co-defendant, Prentice McNeill, portions of appellant's statements were redacted to exclude references to McNeill's role in the crimes, thereby avoiding the necessity of separate trials. See *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968). The redacted portions included appellant's statements that he obtained the gun from a man named Foo Foo after Copeland was shot, that Foo Foo said he got the gun from McNeill, and that appellant hid the gun only after he learned that the gun had been used in a crime. Relying on former OCGA § 24-3-38,[2] appellant sought to admit the redacted testimony to support his claim that he did not have possession of the gun until after Copeland was shot and to explain why he hid the gun. The trial court ruled the redacted portions inadmissible, and appellant asserts the exclusion of the entirety of his statements was error.[3]

Even assuming it was error to exclude the redacted portions of appellant's recorded statements, we conclude reversal is not required because evidence similar to that appellant sought to introduce was admitted at trial through the testimony of another witness. A detective who was present at the time appellant made his recorded statements testified that appellant told him he was not involved in Copeland's shooting, that he bought the gun from Foo Foo after Copeland was shot, and that he hid the gun after learning that it had been used in a previous crime because he was afraid to have it in his possession. Because presentation of this same evidence in appellant's recorded statements would have been cumulative of other testimony

---

[2] Former OCGA § 24-3-38 provided: "When an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence." This provision has been retained but renumbered as OCGA § 24-8-822 in Georgia's new Evidence Code.

[3] Appellant does not enumerate as error the trial court's denial of his motion to sever under *Bruton*.

admitted at trial, we find it highly probable that the redaction of appellant's recorded statements did not affect the outcome of the proceedings. See *Patterson v. State*, 285 Ga. 597 (3) (679 SE2d 716) (2009) (trial court's failure to admit entirety of defendant's statement, including defendant's denial of involvement in crimes, was not reversible error where same evidence was admitted through testimony of defendant and other witnesses); *Jackson v. State*, 262 Ga. App. 451 (3) (585 SE2d 745) (2003) (failure to admit entire statement under OCGA § 24-3-38 harmless where excluded evidence was cumulative of other evidence admitted at trial), overruled in part on other grounds, *Carter v. State*, 266 Ga. App. 691 (2) (598 SE2d 76) (2004). Although the detective did not testify about how Foo Foo came into possession of the gun, the exclusion of appellant's statement that Foo Foo may have obtained the gun from McNeill did not deprive appellant of the opportunity to explain why he hid the gun.

3. During closing arguments, the trial court sustained the State's objection to a statement made by appellant's counsel about the irreversibility of the jury's decision. In sustaining the objection, the court commented, "It's not necessarily irreversible. . . . That's an incorrect statement of the law," and then called counsel to the bench to discuss the State's objection.[4] Appellant argues the court's reference to the possibility of reversal violated OCGA § 17-8-57 by suggesting to jurors that the court thought appellant was guilty of the crimes and that their responsibility could be lightly discharged.

It is error for a trial judge in any criminal case to express or intimate an opinion as to the guilt of the accused. OCGA § 17-8-57. However, not all comments made by a trial court regarding reviewing courts or the appellate process require reversal of a conviction. "Mere abstract references to appellate courts, which do not convey the trial court's opinion, are not necessarily reversible error." *Gibson v. State*, 288 Ga. 617, 619, n. 2 (706 SE2d 412) (2011). In *Gibson*, we reversed

---

[4] The following colloquy occurred during the bench conference:
Judge: We're not going to debate the point, but your statement to the jury that the decision is irreversible, you know it's not true. They have the – let me finish. The decision can be appealed and you know that it can. So if you're going to make the argument, then make it properly.
Defense counsel: I did make the argument properly. And as a matter of the law you're allowed to argue that to the jury. And the fact that there may be an appeal is absolutely irrelevant to a jury. It makes no difference on their verdict.
Judge: The objection is sustained.
Defense counsel: We move for a mistrial, Judge.
Judge: Overruled.
There is no indication in the record that jurors were able to hear any part of the bench conference.

a defendant's conviction where the trial judge, in response to a request from the jury for exhibits, stated "it would be reversible error" if the court gave jurors certain exhibits during deliberations and that they "would have to try the case all over again." Such comments, we held, required reversal because they suggested to the jury that the exhibits were harmful to the defendant's case and improperly referred to the availability of appellate review, intimating the court's opinion that the defendant was in fact guilty. Id. at 618. A few months later, in *State v. Clements*, 289 Ga. 640 (715 SE2d 59) (2011), we determined that a trial judge's reference early in trial to the fact that appellate courts would look over what the court had done and decide whether he had made mistakes did not require reversal because the statements referred to the curative powers of appellate courts without intimating the judge's opinion on the defendant's guilt or lessening the jury's responsibility in making its decision. Id. at 648-649. Although the distinctions between the statements made by the trial courts in *Gibson, Clements*, and this case are subtle, we find no reversible error in this case. As in *Clements*, the court's statements here did not in any way intimate the judge's opinion on the evidence or appellant's guilt. Under these circumstances, we conclude the challenged statements were not reversible error.

4. Appellant contends structural error occurred at trial when the judge left the courtroom during deliberations while the jury was rehearing appellant's recorded statements. The State asserts appellant waived review of this enumerated error by failing to object to the judge's absence at trial or alternatively, that appellant has failed to show any harm from the judge's absence.

It has long been the rule in Georgia that although it is error for a judge to absent him or her self from the courtroom during trial, "it is generally reversible only 'when it is objected to and when it results in some harm. [Cits.]' " *Berry v. State*, 282 Ga. 376, 381 (651 SE2d 1) (2007). See *McIntyre v. State*, 266 Ga. 7 (2) (463 SE2d 476) (1995); *Horne v. Rogers*, 110 Ga. 362, 370 (5) (35 SE 715) (1900); *Pritchett v. State*, 92 Ga. 65 (2) (18 SE 536) (1893). The record in this case does not reflect when the trial judge exited the courtroom, how long she was gone, or whether defense counsel was aware of her absence at the time. Thus, there is no evidence in the record that defense counsel objected to the judge's absence either before the judge left the courtroom or upon her return to the bench. Pretermitting the issue of whether this enumeration of error has been preserved for appeal, however, we conclude appellant has failed to demonstrate harm. The trial judge's absence occurred during deliberations while the jury was rehearing previously received recorded evidence. It is undisputed that the judge was in the courtroom and available to review the jury's

request to rehear the evidence, to instruct jurors as to what evidence they would be allowed to rehear, and when an objection was raised during the playing of the recording, to properly rule on the objection in a substantive manner because she had viewed the same evidence when it was first admitted. Thus, this is not a case where the judge's absence affected the court's ability to make a ruling on a substantive issue. In fact, appellant points us to no prejudice other than the possibility that jurors might have inferred from the judge's absence that she considered appellant's statements incredible. While some amount of prejudice may be inferred from the absence of a judge from the courtroom while trial is ongoing, we find it highly unlikely jurors would interpret a judge's absence as a comment on the credibility of a defendant's statements where, as here, the judge already had reviewed the same evidence in the jury's presence during trial. See *United States v. Love*, 134 F3d 595, 605 (4th Cir. 1998) (speculation that judge's absence during closing arguments may have led jurors to believe judge had made up his mind is insufficient to show prejudice). Absent any indication that the judge's absence affected either the fairness or the outcome of the proceedings, we find the error was harmless.

In reaching this conclusion, we do not hold that a judge's absence from the courtroom during trial may never amount to structural error. Some absences may be so inherently prejudicial that relief is required, and in such cases, this Court will not hesitate to reverse a criminal conviction. See *United States v. Mortimer*, 161 F3d 240, 241 (3d Cir. 1998) ("[W]e cannot . . . anticipate every circumstance under which the judge's absence may destroy the structure."). This is not such a case. Courts are reminded, however, that a trial by jury in the presence of an impartial judge is the foundation of our criminal justice system. As a general rule, when a judge finds it necessary to be absent from the courtroom, the judge should adjourn the proceedings during his or her absence.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., who concurs in judgment only as to Division 4.*

NAHMIAS, Justice, concurring.

I join the majority opinion in full, but with respect to Division 3, I note my continued belief that *Gibson v. State*, 288 Ga. 617 (706 SE2d 412) (2011), was wrongly decided. See id. at 620 (Nahmias, J., dissenting). At one point during the closing arguments in this case, the trial court said that the jury's decision was "not necessarily irreversible" — an accurate statement made in the context of explaining why the court was sustaining the State's objection to the legally inaccurate argument by appellant's counsel that the jury's verdict

was irreversible. The court's comment cannot reasonably be construed as "express[ing] or intimat[ing] [the court's] opinion as to what has or has not been proved or as to the guilt of the accused," OCGA § 17-8-57, although *Gibson*'s convoluted rationale gives appellant the foothold to argue otherwise. Relying on "subtle" distinctions, the Court today moves further down the road toward limiting *Gibson* to its particular facts. See Majority Op. at 4. See also *State v. Clements*, 289 Ga. 640, 648-649 (715 SE2d 59) (2011); id. at 650 (Nahmias, J., concurring specially in part). The better course would be simply to overrule *Gibson*.

I am authorized to state that Justice Blackwell joins in this concurrence.

DECIDED APRIL 29, 2013 —
RECONSIDERATION DENIED MAY 20, 2013.

*August F. Siemon III, Brian Steel*, for appellant.
*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Joshua D. Morrison, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Rochelle W. Gordon, Assistant Attorney General*, for appellee.