In the Supreme Court of Georgia


Decided:   July 5, 2016


S16A0148.   WASHINGTON v. HOPSON.

NAHMIAS, Justice.

In this habeas corpus proceeding, the Chattooga County Superior Court set aside Jason Hopson's rape conviction due to the conduct of former Fulton County assistant district attorney Ashutosh Joshi, which, the habeas court concluded, violated Hopson's constitutional right to due process at his trial. Joshi's conduct after Hopson's trial was unprofessional, and this Court has previously ordered that Joshi be publicly reprimanded for his ethical violation. See In the Matter of Joshi, Case No. S09Y0429 (Feb. 23, 2009).   However, we reverse the habeas court's order, primarily because the factual findings underlying the habeas court's conclusions that constitutional violations occurred at Hopson's trial are clearly erroneous.

1.     (a)     On November 5, 2004, Hopson was indicted in Fulton County for rape, kidnapping, aggravated assault, aggravated sexual battery, and aggravated sodomy.  His trial was held from December 7 to 10, 2004.  Joshi was

the State's prosecuting attorney. The Court of Appeals has summarized the

evidence presented at the trial as follows:

> Viewed in the light most favorable to the verdict, the evidence reveals that [on June 19, 2004] the victim and a female friend attended a party at Zoo Atlanta that was sponsored by a local radio station. After consuming some alcohol, the victim and her friend met Hopson, who invited the women to have a drink with him and his friends. Each of the women drank alcohol from a bottle that Hopson and his friends were sharing. Hopson started a conversation with the victim and attempted to flirt with her, but the victim became uncomfortable, and she and her friend left Hopson and his friends to go to another area of the party.
>
> The victim and her friend had a few more drinks, and the victim's friend became ill. While the victim waited for her friend outside a restroom, Hopson approached the victim again. Hopson put his arm around her and attempted to kiss her, but the victim refused and tried to move away from him.
>
> When the victim's friend returned from the restroom, Hopson offered the friend a glass of what appeared to be water. The friend took a sip from the glass before giving it to the victim, who then drank "quite a bit" of it. Within minutes, the victim felt dizzy and light-headed, and was unable to move or understand words being spoken to her. Her friend, who was disoriented and vomiting, did not see what was happening to the victim. Hopson then dragged the semiconscious victim to a secluded and restricted area of the zoo, where he raped her.
>
> A Zoo Atlanta maintenance worker later found the victim unconscious in the restricted area, with her pants pulled down and her shirt lifted, with Hopson standing near her and pulling his pants up. Hopson left the scene when he saw the maintenance worker, and the worker summoned security to help the victim. The police later found Hopson in another area of the party.

Hopson v. State, 281 Ga. App. 520, 521 (636 SE2d 702) (2006) (Hopson I).

The trial record shows that the victim and her friend testified that the victim felt uncomfortable with Hopson's attentions at the party. Much of the evidence of the rape came from the victim's testimony, but the doctor and nurse who examined her also testified that the victim's vagina was torn, she had bruises on her genitalia, lower extremities, neck, and face, and the tampon she had been wearing was crumpled and pushed into the front of her cervix. Hopson testified that he had consensual sex with the victim and that she went willingly with him to the restricted area of the zoo. Two of his friends who accompanied him to the party also testified that the victim went voluntarily with Hopson.

After the aggravated assault charge was nolle prossed, the jury found Hopson guilty of rape but acquitted him of the remaining charges. On January 18, 2005, he was sentenced to serve 15 years in prison for the rape conviction. Still represented by his trial counsel, Hopson filed a motion for new trial, arguing that the trial court erred in refusing to allow him to re-cross-examine witnesses during the State's case-in-chief and that the court's instruction on consent was erroneous. The motion for new trial was denied, and Hopson raised the same two issues on direct appeal. The Court of Appeals affirmed his

conviction on September 12, 2006.  See <u>Hopson I</u>, 281 Ga. App. at 520.

(b)    On January 21, 2007, Hopson filed an extraordinary motion for new trial, alleging that Joshi knew that the victim and the victim's friend had lied in their testimony at trial and nevertheless allowed the trial to proceed. Hopson alleged that he learned of this information when, during a meeting in September 2006, Joshi offered to represent Hopson in challenging his conviction.  Hopson's family declined to hire Joshi but told Hopson's trial counsel about the offer, and trial counsel and another lawyer filed the extraordinary motion for new trial.  The trial court held a hearing on the motion on March 7, 2007.  The Court of Appeals described the evidence presented at the hearing as follows:

> The evidence at the motion hearing established that sometime after Hopson's trial, Joshi left the district attorney's office and went into private practice. Hopson's family subsequently consulted Joshi and another lawyer with whom Joshi shared a suite, about Hopson's case. Hopson's family recorded the conversation, and it was played for the court during the motion hearing.  In that conversation, Joshi stated he knew at one point in the trial that the victim and her friend lied on the stand.  At the motion hearing, however, Joshi explained that he had made an overstatement when he said he *knew* that they had lied because it was only his opinion.  He was referring to a conflict in the evidence as to whether the victim had wilfully gone with Hopson the night of the rape, or whether she was dragged to the location where the assault occurred.  Joshi stated that this related

4

only to the charge of kidnapping, not the rape charge. After the tape was played, Joshi acknowledged that he told Hopson's family that he did not believe Hopson raped the victim, but he said that his statement was "inartfully worded," and that he only meant to address the kidnapping charge. Nevertheless, Joshi told Hopson's family that for $15,000 he could get Hopson released. He told them that his name could not be on any of the pleadings because he had an absolute conflict of interest. Joshi explained at the motion hearing that he knew that he could not be involved in any representation of Hopson, but he stated that he had discussed with the other lawyer with whom he shared a suite that the lawyer would not be prevented from basing an appeal on any mistakes Joshi made at trial.

Hopson v. State, 307 Ga. App. 49, 50 (703 SE2d 719) (2010) (Hopson II).

The trial court denied the extraordinary motion for new trial on January 6, 2009, and the Court of Appeals affirmed that ruling on November 23, 2010. See id. at 52. The Court of Appeals held that the motion failed under the test set forth in Timberlake v. State, 246 Ga. 488 (271 SE2d 792) (1980), because "[t]he evidence that came to Hopson's knowledge after the trial – that Joshi believed the victim and her friend were lying – was merely, as the trial court found, Joshi's opinion as to his trial witnesses' credibility." Hopson II, 307 Ga. App. at 51. The Court of Appeals also held: "[N]o new trial is warranted on the ground of prosecutorial misconduct. The fact that Joshi believed one witness over another in the face of conflicting testimony does not provide a ground for

5

granting a new trial." Id. Hopson filed a petition for writ of certiorari, which this Court denied on April 18, 2011. See Case No. S11C0516.

(c) On January 14, 2009, while his application to appeal the denial of his extraordinary motion for new trial was pending, Hopson, represented by one of his lawyers from that proceeding, filed a petition for habeas corpus in the Chattooga County Superior Court against Anthony Washington, the warden of the prison in Chattooga County where Hopson was detained. The habeas petition raised the same factual allegations about Joshi's conduct and contended that it violated Hopson's constitutional due process rights.

More than five years later, on June 10, 2014, the habeas court held an evidentiary hearing. No testimony was presented. The court admitted into evidence the transcript of Hopson's trial, the pleadings and trial court orders filed in connection with his motion for new trial and extraordinary motion for new trial, and the Court of Appeals' opinion in Hopson I; in their arguments, the parties also discussed the Court of Appeals' published opinion in Hopson II. Neither the transcript of the extraordinary motion for new trial hearing nor the recording of Joshi's meeting with Hopson's family was included in this

6

material. During the habeas hearing, Hopson's counsel noted this deficiency and asked the court to leave the record open so he could include those two items as evidence. The warden had no objection, and the court agreed. It appears, however, that Hopson never supplemented the record.[1]

On June 30, 2015, the habeas court granted Hopson relief, setting aside his conviction on the ground that his constitutional due process rights had been violated by Joshi's conduct. The warden filed a notice of appeal to this Court, see OCGA § 9-14-52 (a), and the case was orally argued on January 4, 2016.

2.     "When reviewing a habeas court's decision to grant habeas relief, this Court accepts the habeas court's factual findings unless they are clearly erroneous, but we apply the law to those facts de novo." State v. Garland, 298 Ga. 482, 484 (781 SE2d 787) (2016). The habeas court concluded that Joshi's conduct was inappropriate in two ways, both of which justified granting habeas relief. First, Joshi allowed the victim to testify despite knowing that she was lying. Second, after trial, Joshi promised to use knowledge gained while

---

[1] In Hopson's brief to this Court, his counsel asserts that he filed a motion to supplement the record in the habeas court, but the record transmitted to this Court does not include that motion. In any event, the record indicates that the habeas court did not have the extraordinary motion for new trial transcript or the recording of the meeting to consider before reaching its decision.

working at the district attorney's office to get Hopson's conviction reversed. As explained below, the habeas court erred in both respects.[2]

(a) The habeas court ruled that Joshi violated constitutional mandates by "knowingly present[ing] testimony that he believed to be false" at Hopson's trial and by "d[oing] nothing to stop the trial, even when he called a witness whom he knew to be lying." The court based these legal conclusions on its factual findings that Joshi "prosecuted Mr. Hopson in spite of his *knowledge* that Mr. Hopson was innocent and in spite of his *knowledge* that the

---

[2] The warden initially argues that because Hopson raised Joshi's misconduct in his extraordinary motion for new trial and that motion was denied, res judicata (claim preclusion) required the habeas court to deny relief. The claim Hopson asserts in this habeas corpus proceeding is based on the same facts that were litigated in the extraordinary motion for new trial proceeding, and the Court of Appeals held there that "no new trial is warranted on the ground of prosecutorial misconduct," Hopson II, 307 Ga. App. at 51. Nevertheless, Hopson argues, as the habeas court held, that the legal question is different because his claim in the prior proceeding was based on newly discovered evidence and his claim now is based on constitutional due process, which is a claim he could raise only in a habeas corpus proceeding. We have said that "[h]abeas corpus is the exclusive post-appeal procedure available to a criminal defendant who asserts the denial of a constitutional right." State v. Smith, 276 Ga. 14, 15 (573 SE2d 64) (2002), disapproved of on other grounds by Wilkes v. Terry, 290 Ga. 54, 55-56 (717 SE2d 644) (2011). But we have also said that an extraordinary motion for new trial can be "predicated on circumstances other than newly discovered evidence" that allegedly should have been considered by the jury. Ford Motor Co. v. Conley, 294 Ga. 530, 540 (757 SE2d 20) (2014) (citation and quotation marks omitted). Because, as discussed below, we conclude that the habeas court erred in granting relief for a different reason, we need not decide whether Hopson could have (and thus should have) raised his constitutional claim in his extraordinary motion for new trial. See McCorquodale v. State, 242 Ga. 507, 507 n.1 (249 SE2d 211) (1978) (rejecting on the merits the defendant's claims that his constitutional rights to due process and a fair trial were violated, expressly leaving open the issue of whether an extraordinary motion for new trial was an appropriate proceeding to raise such constitutional claims). However, collateral estoppel (issue preclusion), which bars relitigation of facts found in a prior proceeding, does apply in this situation, as we discuss below.

8

alleged victim was lying," "suborned the victim's testimony in spite of his *knowledge* that such testimony was false," and "withheld exculpatory information involving his *knowledge* [of] the falsity of the alleged victim's testimony." (Emphasis added.) In this way, the habeas court asserted, Joshi "let a man he knew to be innocent be convicted of rape."

If Joshi had, in fact, done these things, he would have violated Hopson's due process rights. "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." Napue v. Illinois, 360 U.S. 264, 269 (79 SCt 1173, 3 LE2d 1217) (1959). See also United States v. Clarke, 442 Fed. Appx. 540, 543-544 (11th Cir. 2011) (explaining that to obtain a reversal on the ground that the government failed to correct false testimony, the defendant must establish that "(1) the contested statements were actually false, (2) the government knew the statements to be false[,] and (3) the statements were material"). Likewise, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (83 SCt 1194, 10 LE2d 215)

(1963).[3]

At the extraordinary motion for new trial hearing, the trial court heard the recording of Joshi's meeting with Hopson's family and watched Joshi's testimony about the recording and the case in general. In the appeal of that proceeding, the Court of Appeals reviewed the recording and the hearing transcript. The trial court found, and the Court of Appeals affirmed, that Joshi did not *know* that the victim and her friend testified falsely at Hopson's trial; he at most *believed* that, and his opinion was based solely on information that was available to the defense and the jury. See Hopson II, 307 Ga. App. at 50-51. At the motion hearing, "Joshi explained that he had made an overstatement when

---

[3] The habeas court also pointed out that conduct of this sort would violate the Georgia Rules of Professional Conduct that prohibit a prosecutor from knowingly offering false testimony and failing to disclose exculpatory information. See Rule 3.3 (a) (4) (prohibiting any lawyer from "knowingly . . . offer[ing] evidence that the lawyer knows to be false"); Rule 3.8 (a) (requiring prosecutors to "refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause") and (d) (requiring prosecutors to "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or that mitigates the offense"). However, a violation of these ethical rules is not in itself a constitutional violation and thus not alone a ground for habeas corpus. See OCGA § 9-14-42 (a) (limiting post-sentencing habeas corpus proceedings to claims that the petitioner suffered "a substantial denial of his rights under the Constitution of the United States or of this state"); Britt v. Smith, 274 Ga. 611, 612 (556 SE2d 435) (2001) (holding that a violation of the Uniform Superior Court Rules, which, like the Rules of Professional Conduct, are promulgated by this Court, is not in itself cognizable in habeas), overruled on other grounds by Lejeune v. McLaughlin, 296 Ga. 291, 299 (766 SE2d 803) (2014). See also Blackshear v. State, 274 Ga. 842, 843 (560 SE2d 688) (2002) (explaining that "[a]n ethics violation . . . does not necessarily establish a [constitutional] claim of ineffectiveness of counsel").

he said he *knew* that [the witnesses] had lied because it was only his opinion," and the trial court specifically found Joshi's statements to Hopson's family to be of questionable credibility, explaining that at the time he made them, Joshi was seeking to be hired by the family. Id. at 50.

Moreover, the only basis that Joshi gave for his purported opinion that the victim and her friend had lied was "'inconsistent testimony about whether [the victim] was dragged or went voluntarily to a particular area.'" Id. at 50, 52 (quoting the trial court). These inconsistencies, however, "'were disclosed to [Hopson's] trial counsel and were presented at [the] trial.'" Id. at 50 (quoting the trial court). In fact, Hopson's trial counsel "relied upon [the] discrepancy in closing argument," and the jury acquitted Hopson of the kidnapping charge to which the testimony directly related. Id. at 52. Hopson "could point to no other outside evidence to support Joshi's conclusion"; there was no evidence, for example, that the victim ever recanted to the prosecutor or anyone else. Id. at 50, 52.

Hopson presented no new evidence on this issue to the habeas court. Indeed, when the habeas court ruled, it did not even have the recording and the transcript of Joshi's testimony to review, see footnote 1 above; for the facts

11

about what occurred when Joshi met with Hopson's family and what Joshi said and thought about the case, the habeas court had to rely entirely on the trial court's order and the Court of Appeals' opinion affirming that order in Hopson II. Thus, the habeas court's factual findings that Joshi *knew* that the victim was lying, presented testimony he *knew* to be false at trial, and failed to disclose evidence he *knew* to be exculpatory were clearly erroneous, because they were not supported by the evidence before the court. Moreover, such findings, contrary to the factual findings of the trial court affirmed by the Court of Appeals and based on no new evidence, were barred as a matter of collateral estoppel (issue preclusion). See Sessions v. State, 293 Ga. 33, 34 (743 SE2d 391) (2013); Simmons v. State, 276 Ga. 525, 526 (579 SE2d 735) (2003).

The habeas court also opined that Joshi "had a duty to stop the trial where he *believe[d]* that the main witness was lying" and that "Hopson's [constitutional] rights were violated where [Joshi] proceeded with his prosecution of Mr. Hopson where he did not *believe* that the main prosecuting witness was truthful in her claim." (Emphasis added.) But the relevant constitutional doctrines and ethical rules are framed in terms of *knowledge* and *evidence*, not mere subjective belief. Prosecutors certainly have the discretion

12

to dismiss a case when they believe it would be unjust to proceed, but the habeas court and Hopson cite no authority requiring a prosecutor to dismiss a case based solely on personal doubts about the credibility of a witness that arise from the same evidence available to the defense, the court, and the jury. "'In Georgia, the credibility of a witness is to be determined by the jury,'" and the prosecutor's opinion of a witness's credibility is not admissible evidence. See Hopson II, 307 Ga. App. at 51 (citation omitted).

Prosecutors may not present evidence they know is false or fail to disclose materially exculpatory evidence to the defense, but they need not share their subjective concerns about the strengths or weaknesses of the State's case and witnesses. Especially in close and serious cases, the prosecutor may allow the jury to decide if an alleged crime victim – here, an alleged rape victim – is telling the truth and thus is entitled to the justice she seeks, rather than making that determination unilaterally and preemptively. See Rule 3.3 (a) (4), comment [8] ("The prohibition against offering false evidence only applies if the lawyer knows that the evidence is false. A lawyer's reasonable belief that evidence is false does not preclude its presentation to the trier of fact."). Accordingly, even if Joshi really doubted the truthfulness of the victim's testimony at the time of

13

Hopson's trial – rather than only in retrospect or only when asserting that belief served his attempt to extract money from Hopson's family – that would not amount to a constitutional violation. Based on the same information available to Joshi, the jury believed the victim's testimony that she was raped by Hopson, and that is what counts. For these reasons, the habeas court erred in concluding that Joshi violated Hopson's constitutional rights by allowing the victim to testify.

(b) The second aspect of Joshi's conduct on which the habeas court relied did constitute a blatant violation of his ethical responsibility as a lawyer – Joshi's attempt to parlay his prior work for the State into getting hired to assist a man he once prosecuted, using another attorney without an obvious conflict of interest as a front man to represent the client and assert Joshi's alleged misconduct. See Rule 1.11 (a) ("Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government entity gives informed consent, confirmed in writing."). This Court and the Court of Appeals have previously indicated our agreement with the habeas court's condemnation of Joshi's

14

conduct in this respect, and we reiterate that it was unscrupulous.  See In the Matter of Joshi, supra (accepting Joshi's petition for voluntary discipline based on his admission that he violated Rule 1.11, and ordering that he be given a public reprimand and attend the State Bar's ethics school); Hopson II, 307 Ga. App. at 52 n.1.[4]  However, assuming that a conflict of interest of this sort may constitute a constitutional due process violation, see footnote 3 above, Joshi's misconduct occurred long after Hopson's trial ended.

Recognizing this timing issue, the habeas court explained that it was "concerned about the *possibility* that Mr. Joshi's financial motives arose during the prosecution," and then concluded that "because [Joshi's] profit motive *could* have arisen as early as during or before trial," his prosecution of Hopson constituted structural error, which requires automatic reversal of a conviction. (Emphasis added.)  Cf. Cuyler v. Sullivan, 446 U.S. 335, 349-350 (100 SCt 1708, 64 LE2d 333) (1980) ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.").  The problem with the habeas court's

---

[4]  We note that our February 2009 decision in Joshi's disciplinary case was based on the limited admissions he made in his petition for voluntary discipline, which was unopposed by the State Bar.

reasoning is that there is no evidence in the record that Joshi was even considering leaving the district attorney's office at the time of Hopson's trial, much less that he had at that time contemplated the situation creating the conflict of interest he proposed to Hopson's family some 20 months later. Compare State v. Wakefield, 324 Ga. App. 587, 590, 593 (751 SE2d 199) (2013) (affirming the reversal of convictions based on structural error when the "undisputed evidence supported the trial court's factual finding" that the judge presiding over the trials and an attorney for some of the defendants had an "ongoing and intimate relationship" during the trials). Habeas relief must be supported by evidence in the record, not mere speculation. Accordingly, the habeas court also erred in concluding that Joshi violated Hopson's constitutional rights by unethically soliciting his business long after his conviction.

Judgment reversed. All the Justices concur.